2001 WY 81

In the DISCIPLINARY MATTER OF John R. BILLINGS, d/b/a Open Creek Outfitting, Licensed Outfitter, License No. BG–295,

and

John R. Billings, d/b/a Open Creek Outfitting, Appellant (Petitioner),

v.

Wyoming Board of Outfitters and Guides, Appellee (Respondent).

No. 99–218.

Supreme Court of Wyoming.

Aug. 31, 2001.

S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WY, and Daniel B. Frank of Frank Law Office, P.C., Cheyenne, WY. Argument by Mr. Frank, Representing Appellant.

Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; John S. Burbridge, Assistant Attorney General; Angela C. Dougherty, Assistant Attorney General. Argument by Mr. Burbridge, Representing Appellee.

Before LEHMAN, C.J., and MACY,* GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

[¶ 1] Based on complaints from dissatisfied clients of outfitter John R. Billings (Billings), the Wyoming State Board of Outfitters and Professional Guides (Board), after four days of hearings, revoked Billings' outfitter's license. We reverse and remand for proceedings consistent with this opinion.

* Retired June 2, 2000.

## ISSUES

[¶ 2] Billings presents this statement of the issues:

A. Did the Wyoming Board of Outfitters and Professional Guides (Board) make adequate findings of fact in its order revoking the Appellant's outfitting license to show that it weighed conflicting evidence and made a reasoned decision sufficient to permit judicial review of the Board's reasoning?

B. Upon judicial review of the entire record is there substantial evidence showing that the Board met its burden to prove its case with clear and convincing evidence?

C. Did the Board properly promulgate regulations containing adequate objective standards to permit judicial review of the agency's conclusions of law in its order?

D. Did the Board exceed its statutory authority when it promulgated regulations which expand the reach and effect of the regulations upon the Appellant beyond the clear meaning of the authorizing statute?

E. Did the Board fail to comply with the Wyoming Administrative Procedure Act when it incorporated Federal Regulations by reference in the absence of the procedures required by W.S. § 16–3–103(h)?

F. Did the Board violate the Wyoming Administrative Procedure Act and constitutional notice requirements when it found Appellant violated certain regulations which it did not allege in its complaint?

G. In the event that the Court upholds any of the Board's factual findings and corresponding regulations, did the Board adequately explain how it applied its findings of fact to the law so as to permit judicial review of the Board's ultimate legal conclusions?

H. Is Appellant entitled to judgment declaring that certain provisions in the outfitters act and the Board's commensurate regulations are constitutionally void .for vagueness and over breadth in accordance with the Declaratory Judgments Act?

I. Is Appellant entitled to judgment declaring that the Board has not been properly been [sic] delegated authority to adjudicate matters properly devoted to the jurisdiction of the Courts or other agencies?

As appellee, the Board articulates this statement of the issues:

I. Whether the decision of the Wyoming State Board of Outfitters and Professional Guides revoking Appellant's license was proper under Wyo. Stat. § 16–3–114.

II. Whether Appellant improperly used the "statement of facts" portion of his brief for legal argument in violation of the Wyoming Rules of Appellate Procedure.

III. Whether the Appellant's complaint for declaratory judgment was improperly joined with Appellant's petition for relief.

## FACTS

[¶ 3] Appellant Billings is an outfitter licensed by the Board. Billings has provided commercial outfitting services in the Bridger Teton National Forest since the early 1980s. His business consists of outfitting hunters, through the use of horses and mules, into an area near the southeast corner of Yellowstone Park, in the Thorofare River Drainage. There, Billings maintains two hunting camps. His lower hunting camp is approximately 37–39 miles from the Ishawooa Creek Trailhead while his upper hunting camp is located 30–32 miles from that trailhead. Billings also maintains a "layover" camp along the Ishawooa Creek Trail, where clients stop overnight en route to the hunting camps. The hunting camps may also be reached by way of a trail known as the Deer Creek Trail.

[¶ 4] On July 20, 1998, the Board filed a complaint against Billings seeking censure, suspension, or revocation of Billings' outfitter's license. The Board's complaint was based on written complaints from hunters who hired Billings' during the 1996 and 1997 hunting seasons. The Board's complaint first alleged that Billings acted unethically and dishonorably in the treatment of, and correspondence with, his clients. The complaint next alleged that Billings had willfully endangered his clients. One endangerment allegation asserted the abandonment of clients on Deer Creek Trail as the clients packed out of camp. The other willful endangerment allegation asserted Billings had

permitted a client to lead a troublesome mule, Mel, along the trail and that the client was eventually kicked in the chest by the mule. (The evidence produced at the hearing indicated that the client, Dan Nutsch, was actually kicked by the mule he had been riding, Bo, when he dismounted Bo in order to gather up troublesome Mel.)

[¶ 5] The complaint also alleged that Billings had violated significant federal regulations pertaining to wildlife, game, and fish by (1) improperly disposing of a mule carcass, in violation of 36 C.F.R. § 261.58(s); and (2) caching items in the wilderness without permission from the United States Forest Service in violation of 36 C.F.R. § 261.57(f). The complaint further alleged that Billings had failed to maintain neat and sanitary camps and that Billings had substantially breached his contract with his clients by, inter alia, utilizing hunting guides who were not properly trained and by failing to maintain a sufficient number of employees in camp. The complaint finally alleged that Billings had treated his livestock in an inhumane fashion.

[¶ 6] After four days of hearings, held December 11, 1998, and February 2–4, 1999, the Board issued its findings of fact and conclusions of law on April 22, 1999, revoking Billings' outfitters license. The Board's Findings of Fact included:

3. On or about October 10, 1997, John R. Billings did act unethically and dishonorably by calling his clients names such as "son of a bitch"; by challenging clients to a fight when disagreements arose; and by assaulting a client at the trailhead.

4. On or about October 10, 1997, John R. Billings did willfully endanger the health and safety of clients, in that he abandoned one of his clients, Sandra Ditzler, on the Deer Creek Trail.

5. On or about September 8, 1997, John R. Billings did willfully endanger the health and safety of clients in that he permitted Dan Nutsch to be injured while caring for livestock which belonged to John R. Billings, and which should have been properly cared for by employees of John R. Billings, while traveling into camp.

6. On or about August 25, 1997, John R. Billings did violate significant federal regulations pertaining to Wildlife, game and fish in that he did fail to properly dispose of the carcass of a dead mule as required by 36 C.F.R. 261.58(s), Special Order, relating to Grizzly Bears, properly issued by the United States Department of Agriculture, Forest Service.

7. During the Fall of 1997, John R. Billings failed to maintain a sanitary camp in that he permitted livestock to remain in and near the camp water supply utilized for human consumption; and leave excrement near the water supply in violation of the rules and regulations of the Board.

8. John R. Billings breached his contracts with clients by failing to be responsible for the actions of his employees and professional guides in that he failed to properly provide supervision for his employees in handling of livestock while transporting hunters to camp; failed to provide adequate training for his employees in the handling of livestock; and by his lack of attendance at camp, failed to supervise or adequately provide for the supervision of the activities of his employees while they were in camp; failed to provide adequate professional outfitting and guide services at his camps, and while on the trail to and from his camp; failed to provide adequate employees and guides to properly run his camps; and causing clients to lose hunting time they had contracted for because of his lack of adequate employees and guides.

[¶ 7] The Board's order also includes conclusions of law that are virtually identical to these findings of fact. Those conclusions provided:

4. John R. Billings did act unethically and dishonorably by calling his clients names such as "son of a bitch"; by challenging clients to a fight when disagreements arose; and by assaulting a client at the trailhead in violation of § 23–2–416(a)(v) and (x) W.S.1998 and Chapter 3, Section 1(o) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

5. John R. Billings did willfully endanger the health and safety of clients, in that he

abandoned one of his clients, Sandra Ditzler, on the Deer Creek Trail in violation of § 23–2–416(a)(ix) and (x) W.S.1998 and Chapter 3, Section 1(k), (o) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

6. John R. Billings did willfully endanger the health and safety of clients in that he permitted a hunter, Dan Nutsch, to be injured while caring for livestock which belonged to John R. Billings, and which should have been properly cared for by employees of John R. Billings, while traveling into camp in violation of § 23–2–416(a)(ix) and (x) W.S.1998 and Chapter 3, Section 1(k), (o) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

7. John R. Billings did violate significant federal regulations pertaining to wildlife, game and fish in that he did fail to properly dispose of the carcass of a dead mule as required by regulations relating to Grizzly Bears, 36 C.F.R. 261.58(s), Special Order, properly issued by the United States Department of Agriculture, Forest Service in violation of § 23–2–416(a)(iv) and (x) W.S. 1998 and Chapter 3, Section 1(e) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

8. John R. Billings failed to maintain a sanitary camp in that he permitted livestock to remain in and near the camp water supply utilized for human consumption; and leave excrement near the water supply in violation of § 23–2–416(a)(ix) and (x) W.S.1998 and Chapter 3, Section 1(n), (o) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

9. John R. Billings breached his contracts with clients by failing to be responsible for the actions of his employees and professional guides in that he failed to properly provide supervision for his employees in handling of livestock while transporting hunters to camp; failed to provide adequate training for his employees in the handling of livestock; and by his lack of attendance at camp, failed to supervise or adequately provide for the supervision of the activities of his employees while they were in camp; failed to provide adequate professional outfitting and guide services at his camps, and while on the trail to and from his camp; failed to provide adequate employees and guides to properly run his camps; and causing clients to lose hunting time they had contracted for because of this lack of adequate employees and guides in violation of § 23–2–412(d), 23–2–416(a)(vi) and (x) W.S.1998 and Chapter 3, Section 1(k), (p) and (t), Rules and Regulations of the Wyoming State Board of Outfitters and Professional Guides.

[¶ 8] The Board also specifically found and concluded that Billings did not engage in the inhumane treatment of his livestock. The Board did not make any findings regarding the allegation that Billings had illegally cached items in the wilderness.

[¶ 9] Billings filed a combined petition for review and complaint for declaratory judgment with the district court, which certified the case pursuant to W.R.A.P. 12.09. After hearing oral argument in this matter, this court granted Billings' motion to stay the enforcement of the Board's revocation order. W.R.A.P. 12.05.

### STANDARD OF REVIEW

[¶ 10] The standards for judicial review of agency action are set forth in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] A disciplinary proceeding before a licensing board is an adversary proceeding where the burden is on the complaining party to present its case in a proper manner and to state with precision the charges against the licensee. *Dorr v. Wyoming Board of Certified Public Accountants*, 2001 WY 37 ¶ 8, 21 P.3d 735 ¶ 8 (Wyo.2001); *Devous v. State Board of Medical Examiners*, 845 P.2d 408, 416 (Wyo.1993). Those charges must be established by clear and convincing evidence. *Id.; Painter v. Abels*, 998 P.2d 931, 939–40 (Wyo.2000).

### DISCUSSION

[¶ 12] In addressing Billings' numerous contentions, we will first address those issues related to the petition for review of agency action. We will then address the declaratory judgment action.

### *Adequacy of the Board's findings of fact*

[¶ 13] Billings contends the Board's findings of fact and conclusions of law are insufficient to permit appellate review. We agree. Wyoming law requires that suspension and revocation proceedings before the Board be conducted in accordance with the Wyoming Administrative Procedure Act (WAPA). Wyo. Stat. Ann. § 23–2–416(c) (LexisNexis 2001). WAPA, in turn, requires that a final decision in a contested case include findings of fact and conclusions of law:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2001). The purpose of § 16–3–110 is "to require the articulation of basic facts from which ultimate findings of fact are determined in order to facilitate judicial review." *Harris v. Wyoming State Tax Comm'n*, 718 P.2d 49, 51 (Wyo.1986). Expounding on that theme, this court has ruled that, "[i]t is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know the why." *Geraud v. Schrader*, 531 P.2d 872, 879 (Wyo.), cert. denied 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975); *Billings v. Wyoming State Bd. of Outfitters & Professional Guides*, 837 P.2d 84, 86 (Wyo.1992).

[¶ 14] Turning to the Board's findings, we focus first on finding of fact four, where the Board found Billings had endangered the health and safety of Sandra Ditzler by abandoning her on the Deer Creek Trail. Initially, it is problematic that this finding does not explain how Ditzler's health and safety were endangered by Billings' actions. Moreover, even if this court presumes that abandoning a client on a trail is tantamount to endangering the health and safety of the client, the Board's findings regarding abandonment are inadequate. The Board does not provide any underlying facts to support its finding of ultimate fact—that Ditzler was abandoned. On this issue, we find guidance in previous cases:

In construing the statutory requirements this court has had occasion to distinguish basic facts from ultimate facts. In *First National Bank of Worland v. Financial Institutions Board*, supra, 616 P.2d [787] at 795 [Wyo. 1980], we identified the size of a town, the nature of business activity, and a projected increase in sales tax as basic facts. On the other hand, findings that the evidence did not demonstrate waste and that the evidence did not estab-

lish cause are ultimate facts. *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, [446 P.2d 550 (Wyo.1968) ]. In *Powell v. Board of Trustees of Crook County School District No. 1, Crook County*, supra, 550 P.2d [1112] at 1119–1120 [ (Wyo.1976) ], we addressed a finding that "the contestant has been unable to control the conduct of his students," and we said, "This is a conclusion and not a finding!"

*Westates Const. Co. v. Sheridan County Sch. Dist. No. 2, Bd. of Trustees*, 719 P.2d 1366, 1371 (Wyo.1986). Here, we view the finding that Ditzler was abandoned on the trail as a finding of ultimate fact. Billings' defense to the charge was that he did not abandon Ditzler because he planned to check on Ditzler's progress after he delivered his livestock to the trailhead and that Ditzler had been left in good hands, with her husband and with a client who was known to possess wilderness survival skills. In addition, there was a dispute in the evidence regarding Ditzler's distance from the trailhead when Billings proceeded ahead without her. Nevertheless, the Board articulates no basic facts to support its ultimate finding that Billings' actions amounted to abandonment. Finding four fails to comply with Wyo. Stat. Ann. § 16–3–110.

[¶ 15] Finding number six is likewise inadequate. Although the Board there concludes that Billings violated a significant federal regulation by failing to properly dispose of a mule carcass, it does not identify how Billings failed to properly dispose of the carcass. The quoted federal regulation prohibits a person from possessing or leaving unattended any animal carcass unless the carcass is (1) at least one half mile from any sleeping area, trail, or recreation site; or (2) at least 100 yards from any sleeping area, trail or recreation site and acceptably stored; or (3) being eaten, being prepared for eating or being transported. However, the Board's findings do not reveal how or why Billings' disposal of the carcass failed to comply with this requirement. Finding of fact six is a legal conclusion, unsupported by underlying facts.[1]

[¶ 16] In finding eight, the Board found that Billings "breached his contracts with clients" through various failings. However, the finding does not articulate which clients were affected, the terms of the contracts, or even which contracts were breached. Finding three is similarly inadequate. The finding does not tell us whom Billings assaulted, whom he called a son of a bitch, whom he challenged to a fight, or under what circumstances all these actions occurred.

[¶ 17] Finding number five suffers from other problems. There, the Board found that Billings had willfully endangered the health and safety of Dan Nutsch by permitting him to be injured while caring for livestock "which should have been properly cared for by employees of John R. Billings." In addition to challenging the sufficiency of this finding, Billings also argues it lacks record support. In Billings' view, this finding amounts to a conclusion that his conduct fell below the standard of care for those in his industry. He contends that, because no expert testimony on the issue was presented to the Board, the record does not support the finding. Obviously, clients on an outfitted hunting trip must participate in the adventure. The extent of such participation, however, is not something this court has within its knowledge.

[¶ 18] Perhaps the Board, which consists[2] of a number of persons who would undoubtedly qualify as experts in the field of outfitting, used its expertise to determine that Billings' actions failed to meet his duty of care as an outfitter. However, our decision in *Devous v. State Board of Medical Examiners*, 845 P.2d 408, 418 (Wyo.1993), does not permit the Board to do that:

1. This court is aware that Billings, under examination from the Board, agreed that disposal of the mule carcass was not in accordance with the federal regulation. However, we make our conclusion for the edification of the Board and because there are other significant inadequacies in the Board's order.

2. Pursuant to Wyo. Stat. Ann. § 23–2–408 (Lexis 1999), the Board is comprised of four members representing outfitters, one member of the Wyoming game and fish commission, and two members from the public at large.

Turning then to the appeal of the Board with respect to the decision of the district court to set aside certain statutory grounds for failure of substantial evidence, we affirm the district court in that regard. The crux of the issue is whether the record must include expert testimony with respect to those statutory grounds, or whether we must acknowledge and accept the expertise of the Board members in establishing standards that demonstrate infringement of the statute. There was no expert testimony offered at the hearing to establish standards with respect to these statutory grounds. If judicial review has any purpose, it must be exercised by objectively evaluating evidence in the record. There is no way that a judicial review could reach the subjective determination of standards by individual members of the Board. Consequently, in order to maintain the integrity of judicial review, we conclude it is necessary that, with respect to the violations that were asserted under Wyo. Stat. § 33–26–402(a)(xv), (xviii), and (xxvi), expert testimony in the record was required and, lacking such testimony, there is no substantial evidence to sustain those allegations.

In this case, if the Board intends to rely on a finding that Billings' conduct regarding the mule kick incident fell below the standard of care for those in his industry, the Board should rely on expert testimony in making such a finding. In this case, it would not have been difficult for the Board to obtain such expert testimony, as many of the witnesses would probably have qualified as experts in this field due to their "knowledge, skill, experience, training, or education." W.R.E. 702. Regardless, absent any indication in its findings that the Board is relying on expert testimony, we conclude that the finding is insufficient to permit review.

 [¶ 19] In defending its decision, the Board's brief to this court provides numerous citations to the record pointing to evidence that it claims supports its findings. However, appellate briefing is not the place to articulate sufficient findings of fact. It is not the duty of this court to analyze and assess evidence presented to an administrative body to determine the weight to be given evidence or the credibility to be afforded witnesses. *State ex rel. Worker's Compensation Div. v. Roggenbuck,* 938 P.2d 851, 854 (Wyo.1997); *Carrillo v. State ex rel. Workers' Safety and Compensation Div.,* 987 P.2d 690, 693 (Wyo.1999). Instead, it is simply our task to determine whether the evidence supports the administrative decision. We have previously accepted findings of fact that were "sparse." *Whiteman v. Workers' Safety and Compensation Div., Dep't of Employment,* 984 P.2d 1079, 1083 (Wyo.1999). Here, however, the record includes over 1200 pages of transcript and over 60 exhibits. The court is repeatedly left with the question "Why" when reviewing the Board's findings. We thus conclude those findings are inadequate to permit appellate review. We are not requiring perfection from the Board. However, some explication of the basic facts is required before this or any court can review an agency decision.

 [¶ 20] Billings also complains that the Board's decision to revoke his license is not supported by clear and convincing evidence, the burden of proof in license revocation cases. *Dorr v. Wyoming Board of Certified Public Accountants,* 2001 WY 37 ¶ 8, 21 P.3d 735 ¶ 8 (Wyo.2001); *Painter v. Abels,* 998 P.2d 931, 939–40 (Wyo.2000); *Devous v. State Board of Medical Examiners,* 845 P.2d 408, 416 (Wyo.1993). Here, however, we decline to perform such a review without adequate findings of fact.

### The Board's Rules

[¶ 21] Billings lodges a litany of complaints against the rules promulgated by the Board. To address these issues, we will first set out the statutes and rules the Board utilized to revoke Billings' license. Wyo. Stat. Ann. § 23–2–416 (LexisNexis 2001), provides in pertinent part:

(a) The board may * * * suspend or revoke a license issued under this act for any of the following causes:

　　* * *

(iv) Violation of any significant federal or state law or related regulations pertaining to wildlife, game and fish;

(v) Unethical or dishonorable conduct;

(vi) A substantial breach of contract with any person using outfitting or professional guiding services of the licensee;

\* \* \*

(ix) Willfully endangering the health and safety of any person;

(x) Violation of this act or any rule or regulation of the board.

[¶ 22] Pursuant to Wyo. Stat. Ann. § 23–2–410(a)(ii) (Lexis 1999),[3] the Board has promulgated rules regarding revocation. Those rules provide in pertinent part:

CHAPTER 3 REGULATORY PROVISIONS

Section 1. Rules of Professional Conduct. The following includes, but is not limited to, rules of professional conduct, a violation of which may be considered unethical or dishonorable conduct;

\* \* \*

(e) A licensee shall comply with all local, state and federal laws and regulations pertaining to wildlife, game and fish.

\* \* \*

(k) A licensee shall not breach a contract with any person using outfitting or professional guide services of the licensee.

\* \* \*

(n) A licensee shall maintain neat, orderly and sanitary camps at all times and shall provide clean, fresh drinking water, protect all food from contamination and dispose of all garbage, debris and human waste. Livestock facilities shall be separate from camp facilities. Streams shall be protected from contamination.

(o) A licensee shall not willfully endanger the health and safety of the public.

(p) A licensee shall provide a licensed professional guide for every two (2) hunters in wilderness areas and for up to six (6) hunters in all other areas of the State.

\* \* \*

(t) A licensee shall not violate any provision of the Act.

Section 2. Denial, Suspension and Revocation. Failure to comply with any provision of these Rules shall be grounds for denial of an outfitter or professional guide license or any other discipline to include, but not limited to, suspension for a period not to exceed three (3) years or revocation of any outfitter or professional guide license issued by the Board. \* \* \*

[¶ 23] Billings claims the Board has promulgated and applied rules that exceed the statutory authority granted to the Board by the legislature. After a comparison of the statute and the Board's rules, we agree with Billings that subsections (e) and (k) of Chapter 3, Section 1, operate to exceed the Board's statutory authority.

[¶ 24] It is well established that: An administrative agency is limited in authority to powers legislatively delegated. "Administrative agencies are creatures of statute and their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim."

*Amoco Production Co. v. State Bd. of Equalization,* 12 P.3d 668, 673 (Wyo.2000) (citations omitted). "An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority." *Platte Development Co. v. State, Environmental Quality Council,* 966 P.2d 972, 975 (Wyo.1998). Thus, administrative agencies are bound to comply with their enabling statutes. *Sears v. Romer,* 928 P.2d 745, 751 (Colo.App.1996). An administrative rule or regulation which is not expressly or impliedly authorized by statute is without force or effect if it adds to, changes, modifies, or conflicts with an existing statute. *Id.* Conversely, a rule or regulation which is expressly or impliedly authorized by the enabling statute will be given force and effect.

---

**3.** That subsection provides:
 (a) The board shall:
 \* \* \*
 (ii) Carry out the provisions of this act and in accordance with the Wyoming Administrative Procedure Act, adopt necessary rules and regulations for carrying out this act including

requirements for training, experience and knowledge of relevant law and rules and regulations as may be imposed upon outfitters and professional guides, the content and requirements for examination of license applicants and other necessary and reasonable rules[.]

*Id.; Public Service Comm'n v. Formal Complaint of WWZ Co.*, 641 P.2d 183, 186 (Wyo. 1982) (An agency's "implied powers are only those derived by necessary implication from express statutory authority granted to the agency."); *Painter v. Abels*, 998 P.2d 931, 938 (Wyo.2000) ("Administrative rules and regulations have the force and effect of law."). Indeed, the Wyoming legislature has implicitly recognized these limitations on rulemaking authority. The statute that permits the Insurance Commissioner to promulgate rules, Wyo. Stat. Ann. § 26–2–110(a), provides: "No rule or regulation shall extend, modify or conflict with any law of this state or the reasonable implications thereof." Cited in *State Farm Mut. Auto. Ins. Co. v. Wyoming Ins. Dep't*, 793 P.2d 1008, 1012 (Wyo.1990).

[¶ 25] With the combination of § 1(e) and § 2, the Board has established that a license may be revoked for a failure to comply with *any* local, state, or federal law or regulation pertaining to wildlife, game or fish. The authority provided by statute is more limited: Wyo. Stat. Ann. § 23–2–416(a)(iv) provides that a license may be revoked only for violation of "any *significant* federal or state law or related regulations pertaining to wildlife." (Emphasis supplied.) Because § 1(e) has the effect of changing the statutory terms "any significant" to "all," that regulation has expanded the power of the Board by permitting it to revoke a license for violation of any law or regulation rather than violation of only the significant ones. The possibility exists that the Board, as evidenced by its regulation, considers all "state and federal law[s] and regulations pertaining to wildlife" to be significant. However, such an analysis would effectively delete the term "significant" from the statute and would be contrary to the legislative will. Section 1(e) is beyond the power granted to the Board.

[¶ 26] Section 1(k) similarly expands the Board's power. The statutory provision, § 23–2–416(a)(vi) permits revocation of a license for a "substantial" breach of contract. Section 1(k), on the other hand, increases the power of the Board by permitting it to revoke a license for any breach of contract, not just a substantial breach. Section 1(k) is, therefore, beyond the power of the Board.

[¶ 27] Although we have determined that §§ 1(e) and 1(k) are invalid, this does not mean the Board is precluded from utilizing the comparable statutory provisions (§ 23–2–416(a)(iv) & (vi)). *See Wyoming Mining Ass'n v. State*, 748 P.2d 718, 724 (Wyo.1988) ("A clear statutory direction is enforceable by an agency in accordance with its plain meaning without promulgation of a rule.") Despite Billings' complaints that the Board has provided no definition of which regulations will be considered significant, that is not a concern in this case. The federal regulation/order in question relates to the disposal of carcasses and was enacted to prevent those carcasses from attracting grizzly bears. Indeed, the regulation/order was implemented "with a primary goal of minimizing grizzly/human encounters." Common sense and human experience tell us that human interaction with grizzly bears is a dangerous and potentially deadly proposition. *Peterson v. Game and Fish Com'n*, 989 P.2d 113, 116 (Wyo.1999). We have no trouble concluding that a regulation/order developed to minimize such interactions is "significant." As for whether any breaches of contract by Billings were "substantial," we are confident that the Board, in any future order applying this provision (§ 23–2–416(a)(vi)) will explain why a breach of contract is "substantial."

[¶ 28] Billings also contends the Board's rules do not contain adequate objective standards. Initially, we agree with Billings that the terms "unethical or dishonorable" conduct contained in § 23–2–416(a)(v) are too amorphous to permit the Board to invoke them without providing further guidance as to what it considers unethical or dishonorable. Otherwise, any action by the Board would be arbitrary and capricious. In so concluding, we rely on *Matter of Bessemer Mt.*, 856 P.2d 450, 453 (Wyo.1993), where this court held that

the EQC cannot classify lands within the state as "very rare or uncommon" without first establishing by regulation the criteria and factors which will set the standard for that classification. We are satisfied that,

in the absence of such a regulatory standard, the phrase "very rare or uncommon" is too amorphous to permit judicial review of the action of the EQC. Consequently, any such classification inherently is arbitrary and capricious.

We find this reasoning equally applicable in this case.

[¶ 29] At the same time, we conclude that the legislature, pursuant to Wyo. Stat. Ann. § 23–2–410(a)(ii), intended to provide the Board with the discretion to promulgate rules pertaining to unethical and dishonorable conduct. We again rely on *Matter of Bessemer Mt.,* 856 P.2d at 454, where it was written:

> We are satisfied the intent of the legislature was to invoke the expertise of the EQC to establish by regulation the factors and criteria that will serve as a standard for making the classification of "very rare or uncommon." When the legislative mandate is broad, as in this case, the administrative agency must invoke expertise to create standards, which will furnish notice to the public of how the decision may be reached. The creation of such standards serves to eliminate any need to develop standards on a case by case basis, which is time-consuming; may lead to inconsistent results; and severely inhibits judicial review.

[¶ 30] Taking its cue from the legislature, the Board has created rules of professional conduct in chapter 3 of its regulations. A breach of those rules amounts to "unethical or dishonorable conduct." To the extent the Board has taken the subjects laid out in the statute and incorporated those into the definition of unethical or dishonorable conduct, we see no problem. Although this form of rule making may be duplicative of the power the Board has been granted by the legislature, we find nothing inherently improper with it.

[¶ 31] Regardless, there are two matters involving alleged unethical or dishonorable conduct we must consider further. We first examine § 1(n), which permits the Board to take action based on a licensee's failure to maintain a neat, orderly, and sanitary camp. Billings is correct that this regulation lacks a clear statutory basis. However, that does not necessarily mean the Board was without power to promulgate the regulation that designates this conduct as unethical or dishonorable. As we have previously stated, the Board has been given the power to promulgate rules. The question, then, is whether § 1(n) is impliedly authorized by the enabling statute. Billings makes no attempt to establish why § 1(n) is beyond the power of the Board. He does not provide any cogent argument why the Board cannot conclude that the failure to maintain a neat and sanitary camp is "unethical or dishonorable." He has thus not persuaded this court that the Board lacked the power to promulgate this rule. Under these circumstances, the rule will be given effect.

[¶ 32] Next, we examine finding of fact three and conclusion of law four, where the Board found that Billings (1) acted unethically and dishonorably and (2) willfully endangered his clients by calling a client a "son of a bitch"; challenging a client to a fight; and assaulting a client. The first problem is that neither the finding nor the conclusion specifies which conduct amounts to willful endangering and which conduct it considers unethical or dishonorable. It is clear that, in finding that Billings called someone a "son of a bitch," the Board was relying on a letter written by Billings addressed to a client who was dissatisfied with Billings' services. In the letter, Billings suggests this manner of settling their differences: "Preferably we can accomplish this, one son of a bitch to another, with our fists." We agree that Billings' conduct is unfortunate. However, we do not agree that the reference to "son of a bitch" in a letter endangered the client when he received the letter at his home in Tulsa, Oklahoma. Thus, the question is whether this conduct can be penalized in reliance on only the statutory terms "unethical or dishonorable conduct." As we have previously stated, to simply tag the conduct unethical or dishonorable is not sufficient under *Bessemer Mt.* Therefore, we cannot find a statute or regulation that clearly permits the Board to punish Billings for such conduct.

[¶ 33] As for the assault and the challenge to a fight, perhaps assaulting clients and challenging them to fights could be considered willful endangerment. However, at this point, we cannot tell if this is what the Board intended by its finding and conclusion. The Board will have the opportunity to clarify this point in further proceedings.

[¶ 34] Billings also complains that certain statutory provisions require definition. He complains that the Board must define "willfully endangering" found in § 23–2–416(a)(ix). We are of the opinion that those terms are not so technical that further definition is required. In *Campbell v. State*, 999 P.2d 649, 658 (Wyo.2000), in the context of the child endangerment statute, this court agreed with a number of decisions that "concluded that some form of the term 'endanger' has an easily and commonly understood meaning and is not vague." As for the term willful, we have previously stated, in a license revocation case, that when looking at the willfulness of a licensee's conduct, this court's duty was "to determine if the evidence establishes intentional, or knowing, or voluntary acts as distinguished from accidental." *Kirbens v. State Bd. of Medicine*, 992 P.2d 1056, 1064 (Wyo.1999). We conclude the Board was not required to define "willfully endangering."

[¶ 35] Billings also complains that the Board must define the term "violation" found in § 23–2–416(a)(iv). However, we agree with the State that this term needs no further definition. Violation in this context simply means non-compliance with the law or regulation in question.

### Federal Regulations

[¶ 36] Billings next complains the Board improperly relied on grizzly bear regulation in its decision. He argues that, before the Board may rely on federal regulations, those regulations must be incorporated into the Board rules in accord with WAPA. We disagree.

[¶ 37] The statute Billings relies on, Wyo. Stat. Ann. § 16–3–103(h) (Lexis 1999), provides:

(h) An agency may incorporate, by reference in its rules and without publishing the incorporated matter in full, all or any part of a code, standard, rule or regulation that has been adopted by an agency of the United States or of this state, another state or by a nationally recognized organization or association, provided:

(i) Incorporation of the full text in agency rules would be unduly cumbersome or expensive;

(ii) The reference in the rules of the incorporating agency fully identifies the incorporated matter by location, date and otherwise, and states that the rule does not include any later amendments or editions of the incorporated matter;

(iii) The agency, organization or association originally issuing the incorporated matter makes copies of it readily available to the public and the rules of the incorporating agency state where such copies are available;

(iv) The incorporating agency maintains and makes available for public inspection a copy of the incorporated matter and the rules of the incorporating agency state where copies of the incorporated matter are available at cost from the incorporating agency; and

(v) The incorporating agency otherwise complies with all procedural requirements under this act and the rules of the registrar of state agency rules governing the promulgation and filing of agency rules.

Billings' reliance on Wyo. Stat. Ann. § 16–3–103(h) under his circumstances is misplaced. First, nothing in this provision (or the outfitter statutes) requires that federal regulations be incorporated into the Board's rules before the Board can rely on a violation of the same to suspend or revoke a license. Indeed, the "may" language found in (h) clearly indicates permissive authority. *Rawson v. State*, 900 P.2d 1136, 1138 (Wyo.1995). More importantly, we need not reach the issue presented by Billings because it is clear that Billings was aware of, and subject to, the federal regulation. During examination by the Board, Billings admitted the grizzly bear regulation was given to him as part of his

Special Use Permit issued by the United States Forest Service. Under these circumstances, we reject Billings' argument.

### Notice of Allegations

[¶ 38] Billings next contends that he was not afforded proper notice of the allegations against him, as required by Wyo. Stat. Ann. § 16–3–113. Specifically, he complains of insufficient notice of (1) the willful endangerment allegation concerning the mule kick incident and (2) the allegation that he breached his contracts with clients by failing to maintain a proper hunter-to-guide ratio. Regarding the mule kick incident, the Board's complaint alleges the mule Mel kicked a client. Although the complaint neither specifies that Nutsch was the client who was kicked nor that it was actually the mule Bo that did the kicking, it is clear that Billings had notice of the mule kick incident. First and foremost, the Board's answers to interrogatories identify Nutsch as the person injured as a result of interaction with Mel. In addition, Billings' own testimony clearly establishes that he had notice of the incident. Not only did Billings visit Nutsch in the hospital the day of the incident, he performed his own investigation. In so doing, he requested his employees provide detailed written statements about the mule kick incident. Moreover, Nutsch has filed suit against Billings to recover for personal injuries suffered as a result of being kicked. We conclude Billings was provided sufficient notice of this allegation.

[¶ 39] As for Billings' complaint that he was not provided sufficient notice of the hunter-to-guide ratio problems, we again disagree. Not only does the complaint against Billings generally allege that he failed to provide adequate professional guiding services, it specifically alleges that clients were unable to hunt because of lack of guides. This clearly raises the issue of the proper number of guides, a requirement set out in Wyo. Stat. Ann. § 23–2–401(a). Billings' argument is rejected.

### DECLARATORY JUDGMENT ACTION

[¶ 40] Along with his petition for review of agency action, Billings filed a declaratory judgment action pursuant to W.R.A.P. 12.12 and Wyo. Stat. Ann. § 1–37–101 et seq. (Lexis 1999). In the declaratory judgment action, Billings seeks a declaration that various provisions of the outfitter statutes and the Board's rules are unconstitutional. The Board argues that the declaratory judgment action has been improperly joined with the petition for review and that the declaratory judgment action must be brought separately. However, the Board has not appealed from the district court's certifying case to the supreme court certification order. In that order, the district court concluded that the declaratory judgment action was properly filed and certified the declaratory judgment action along with the petition for review. Because the Board did not appeal, we cannot address its contentions. We will, however, address whether this court has jurisdiction to entertain a declaratory judgment action that has been certified by the district court pursuant to W.R.A.P. 12.09(b).

[¶ 41] In the published order of *In re Conflicting Lease Application for Wyoming Agricultural Lease No. 1–7027*, 972 P.2d 586, 587 (Wyo.1999), this court addressed the method by which a party may assail the constitutionality of a statute that grants agency authority. There, we (1) reiterated that an administrative agency has no authority to determine the constitutionality of a statute and (2) indicated that the district court and this court have no "authority on review of an agency decision to hold a statute unconstitutional *vel non.*" *Id.* Based on these principles, we concluded that the "appropriate course for an aggrieved party to pursue when a statute that affords authority to an agency is deemed to be unconstitutional is found in and preserved by the provisions of W.R.A.P. 12.12." *Id.* That rule indicates that the remedy to be sought is an independent declaratory judgment action seeking a declaration that the statute is unconstitutional. *See In re Worker's Compensation Claim of Shryack*, 3 P.3d 850, 856–57 (Wyo.2000); *Dorr v. Wyoming Board of Certified Public Accountants*, 2001 WY 37 ¶ 13, 21 P.3d 735 ¶ 13 (Wyo.2001).

[¶ 42] Despite Billings' attempt to follow our mandate, we find no authority in

573

W.R.A.P. 12.09(b) or elsewhere in the Rules of Appellate Procedure for the district court to certify the declaratory judgment action. W.R.A.P. 12.09(b) indicates that a certification order is limited to the issues found in the petition for review of an agency action. *In re Conflicting Lease Application*, 972 P.2d at 587. Perhaps more importantly, the district court's certification order has the effect of giving this court original jurisdiction over the declaratory judgment action. Such original jurisdiction is not contemplated by the declaratory judgment statute or the Wyoming Constitution. We conclude the district court was without authority to certify the declaratory judgment action; and we, therefore, cannot address the issues presented by Billings' declaratory judgment action. Despite this, we are comfortable in concluding that Billings' claims have been substantially resolved by this opinion.

### CONCLUSION

[¶ 43] For the reasons stated, we remand this case to the district court with instructions to enter a judgment vacating the order of the Board and remanding the proceedings to the Board for further proceedings consistent with this opinion.