2002 WY 55

**Ronald R. LINEBERGER,**
**Appellant (Petitioner),**

v.

**WYOMING STATE BOARD OF OUTFIT-TERS AND PROFESSIONAL GUIDES,**
**Appellee (Respondent).**

**No. 01–113.**

Supreme Court of Wyoming.

April 11, 2002.

S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WYO, and Daniel B. Frank of Frank Law Office, P.C., Cheyenne, WYO, Representing Appellant.

Hoke MacMillan, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Eugene W. Jackson, Assistant Attorney General, Cheyenne, WYO, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] This case comes before us in the form of a Petition for Review of Agency Action, certified to this Court by the district court pursuant to W.R.A.P. 12.09. Ronald R. Lineberger (the appellant) raises nine separate issues in contesting the decision of the Wyoming State Board of Outfitters and Professional Guides (the Board) to deny his 2000 application for a professional guide license. While we conclude that the issues have been rendered moot by the passage of time, we do hold, since the issue will no doubt continue to arise, that the Board exceeded its authority by imposing a condition on the appellant's license to the effect that he would voluntarily relinquish his license if convicted of violating *any* state or federal law.

## ISSUES

[¶ 2] The appellant states the issues as follows:

1. Did the Board exceed its statutory authority, abuse its discretion, and act arbitrarily and capriciously when it required petitioner, as a condition of obtaining his professional guide license, to sign a waiver agreement which provided that he would forfeit his license in the event he was convicted for violation of any law?

2. Did the Board exceed its statutory authority, abuse its discretion, and act arbitrarily and capriciously when it refused to renew petitioner's guide license on the basis that he was convicted of violating a law which was unrelated to the occupation of guiding?

3. Did the Board exceed its legal authority, act arbitrarily and capriciously, abuse its discretion, and act not otherwise in accordance with the law when it required petitioner to execute the waiver agreement after petitioner was already licensed in 1989?

4. Was the Board's interpretation of the waiver agreement in which it interpreted the agreement to require petitioner to forfeit his guide's license in the event that he is convicted of violating any law proper and an abuse of discretion, or is the waiver agreement limited to violations of law related to a candidate's fitness to be a professional guide?

5. Does the administrative record contain substantial evidence to support the Board's decision to deny petitioner's application?

6. Did the Board include improper findings of fact outside of the administrative record?

7. Did a Board member who took part in the investigation improperly refuse to recuse himself from deliberations in violation of Wyo. Stat. § 16–3–111?

8. Did the Board engage in prohibited *post hoc* rationalization decision-making when it stated on the record that its decision was to deny petitioner's application, but ordered the parties to file proposed findings of fact and conclusions of law to support the Board's decision?

9. Was the Board's decision arbitrary and capricious, an abuse of discretion and otherwise not otherwise in accordance with the law?

The Board reduces these issues to the following:

I. Whether the Board had authority to require Lineberger to sign a waiver before issuing Lineberger a conditional professional guide's license.

II. Whether the Board was correct in denying Lineberger's application for a professional guide's license.

III. Whether the process was tainted when the Board member refused to recuse himself.

[¶ 3] For the reasons set forth more fully below, we will directly answer only the following question:

May the Board condition the granting of a professional guide's license upon a licensee's agreement that he will voluntarily relinquish the license in the event that he is convicted of violating *any* state or federal law?

### THE STATUTORY CONSTRUCT

[¶ 4] Non-residents may not hunt big or trophy game animals on wilderness areas in Wyoming unless accompanied by a licensed professional guide or a resident guide. Wyo. Stat. Ann. § 23–2–401(a) (Lexis Supp.2000). The Board is responsible for licensing guides under Wyo. Stat. Ann. § 23–2–410 (LexisNexis 2001):

(a) The board shall:

* * *

(ii) Carry out the provisions of this act and in accordance with the Wyoming Administrative Procedure Act, adopt necessary rules and regulations for carrying out this act including requirements for training, experience and knowledge of relevant law and rules and regulations as may be imposed upon outfitters and professional guides, the content and requirements for examination of license applicants and other necessary and reasonable rules[.]

* * *

(c) The board shall license and regulate outfitters and professional guides in this state and shall:

(i) Examine applicants for licensure under this act;

(ii) Deny or approve applications for licensure and may revoke or suspend licenses in accordance with this act and its rules and regulations;

(iii) Conduct hearings upon complaints received relative to licensees;

(iv) Impose reasonable restrictions and limitations upon licensees as necessary to implement this act;

(v) Designate areas within the state as recommended by the commission for game management purposes in which a licensee may conduct outfitting or professional guiding under the license[.]

[¶ 5] Specific statutory qualifications for a professional guide's license are contained in Wyo. Stat. Ann. § 23–2–412(a) (LexisNexis 2001):

(a) An applicant for a professional guide's license under this act shall meet the following qualifications:

(i) At least eighteen (18) years of age;

(ii) Employed by or operating under an independent contract with a licensed outfitter[.]

The same statute, in subsection (e), adds the following requirements:

(e) In addition to subsection (a) of this section, an applicant for a professional guide's license shall report:

(i) Any conviction or forfeiture of any bond amount for a violation of federal or state law or applicable regulation relating to wildlife, game and fish within five (5) years before the date of filing license application;

(ii) Any felony conviction; and

(iii) Any conviction for a violation of federal or state law relating to criminal fraud and occurring within five (5) years prior to the date of filing application.

[¶ 6] The Board's authority to require examination before licensure is found in Wyo. Stat. Ann. § 23–2–413 (LexisNexis 2001). Under subsection (c) of that section, the Board is authorized to "investigate the qualifications of the applicant to ensure compliance with this act." Once the applicant has passed the required examination and the Board has "determine[d] the applicant is otherwise in compliance with the requirements of this act and its rules and regulations," the Board "may" issue a license. Wyo. Stat. Ann. § 23–2–414(a) (LexisNexis 2001).

[¶ 7] Of specific significance to the issue at hand is the limitation found in Wyo. Stat. Ann. § 23–2–414(b):

A license issued under this act is valid for the calendar year in which issued and shall expire on December 31 of that year unless earlier expiring pursuant to W.S. 23–2–412(b) or otherwise suspended or revoked.

### FACTS

[¶ 8] In 1993, the appellant was convicted of three federal wildlife-related felonies. He served a year in prison and three years of probation. In 1998, the appellant applied to the Board for a professional guide's license. The Board granted the application, but only after conditioning the license for a period of five years. The appellant signed an agreement on August 10, 1998, with the following specific condition:

I agree to a five year conditional license, wherein if I am convicted of violating any game & fish, Board law or rule and regulation, Forest Service, State or Federal law for this duration, I will voluntarily relinquish my guide's license to the Board and I waive any right to appeal or hearing procedure.

[¶ 9] The appellant received his conditional professional guide's license in 1998 and

again in 1999.[1] He applied again on June 20, 2000. His application was not granted; instead, it was returned to him with instructions to appear before the Board at its next meeting so renewal could be considered in light of the appellant's "current conviction." That "current conviction" is the basis of the present petition for review.

[¶ 10] On June 9, 2000, a Judgment and Sentence was entered in the County Court of Park County, Wyoming (now referred to as Circuit Court), adjudicating the appellant guilty of two counts of misdemeanor property destruction. The convictions were the result of a plea agreement between the appellant and the Park County and Prosecuting Attorney. The Judgment and Sentence neither mentions the nature of the property destroyed nor names the recipient of the $4,000.00 in restitution ordered to be paid by the appellant. The only hint that the charges may have involved wildlife is the following paragraph in the Written Plea Agreement of Defendant:

7. The State of Wyoming further expressly represents and agrees that no other criminal charges or investigations whether they be State and/or Local will be filed, sought and/or pursued pursuant as against the Defendant, Mr. Ronald R. Lineberger, as relates to the original criminal information filed in this matter, and including any copper tags attached to the snares or traps inscribed with the name Ronald R. Lineberger the same or similar to such tags presently in the possession of the State of Wyoming, and referenced as State of Wyoming v. Ronald R. Lineberger, Criminal No. Cr–9909–4–COD.

[¶ 11] It is at this point that we must digress a bit to at least mention how odd it is that we are called upon in this case to decide whether the Board may condition a professional guide's license upon the violation of *any* law as opposed to a *wildlife* or *game and fish* law. Appendix E attached to the

---

1. We made it clear in *Wyoming Bd. of Outfitters and Professional Guides v. Clark*, 2002 WY 24, ¶ 13, 39 P.3d 1106, 1109 (Wyo.2002), that "the Board is expressly limited to granting a guide license for a period of no more than a one-year period" and that the Board could not issue a multi-year license even if it desired to do so.

Board's appellate brief is a copy of the original Summons issued to the appellant in October 1999, in Case No. CR–9909–4–COD. That summons alleges three counts of wanton destruction of a big or trophy game animal and one count of failing to report the unlawful trapping of a deer. No doubt, it is within the province of the Park County and Prosecuting Attorney's duties to plea bargain a violation of the game and fish statutes to a violation of the criminal code. Unfortunately, however, the divergence between the original charges and the eventual convictions precipitated an administrative process that cannot be characterized as a search for the truth. Eventually, even the Board joined the appellant's attempt to pretend that the "current conviction" had nothing to do with wildlife.

[¶ 12] The appellant appeared at the Board's regular meeting on August 26, 2000. Since the conditions imposed by the Board in 1998 were still in effect, the minutes of the meeting reflect the appellant's appearance as being "for violating the terms of the issuance of his 1998 Professional Guide's license." A lengthy discussion ensued at the meeting between Board members and the appellant, with the Board members trying to get the appellant to admit that the property destruction convictions involved the destruction of wildlife, and with the appellant eventually "claiming the Fifth Amendment" in response. The end result was Board denial of the appellant's 2000 application.

[¶ 13] The appellant requested a contested case hearing following the denial of his application. The Board held that hearing on February 27, 2001. What transpired at that hearing is remarkable, for several reasons. The first thing that should be noted is that the license application being considered was for the year 2000. Wyo. Stat. Ann. § 23–2–414(b) mandates that, had such a license been granted, it would have been valid only until December 31, 2000. The contested case hearing took place nearly two months after that date. While counsel and the hearing examiner grappled with the question of whether the matter before the Board was the denial of a new application or denial of a renewal application, they never squarely faced the fact that any application for a 2000 license was moot.

[¶ 14] The second remarkable feature of the contested case hearing was the agreement of the parties to limit the issue to whether the Judgment and Sentence showing the two misdemeanor property destruction convictions—being violations of any state or federal law—were violations of the 1998 agreement. While it is, perhaps, not surprising that the appellant would be delighted by the exclusion of any evidence as to the original wildlife charges, it is not nearly so clear why the Board made this concession. In any event, the result was that the Board chose to take a stand on the limited question of whether the Board can impose a condition that a licensee may not violate *any* law:

[ASSISTANT ATTORNEY GENERAL]: Actually I will speak to that. He just talked at length about significant wildlife violations, and I'm saying it doesn't matter whether there's a wildlife violation or not.

What happened was Mr. Lineberger sent a letter to the Board saying I would like to request a probationary license. The Board granted a probationary license. The conditions on that probationary license were, one, the conditions would stay in effect for five years; two, he would not violate any state or federal laws, and then there were other conditions dealing with Game and Fish regulations, Board regulations, Forestry Service regulations, but it said also in there no violations of state or federal law.

Now, the Board placed those restrictions on the license under Wyoming Statute 23–2–410(c)(iv), and I'll read that to you, and it says, "The Board shall impose reasonable restrictions and limitations upon licensees as necessary to implement this act." That's what they did when they established those restrictions.

[¶ 15] The third unusual feature of the contested case hearing, which we will note in passing, is that, after the parties agreed to exclude the testimony of anyone who knew anything about the events underlying the misdemeanor convictions, the next thirty pages of the hearing transcript are devoted

to *voir dire* of the Board by the appellant's counsel to make sure that, in case any Board members did know the facts, they would not be influenced by them!

## STANDARD OF REVIEW

[¶ 16]   The standard for judicial review of administrative agency action is found in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed;  and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law;  or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*See also Wyoming Bd. of Outfitters and Professional Guides v. Clark,* 2002 WY 24, ¶ 7, 39 P.3d 1106, 1108 (Wyo.2002).

## DISCUSSION

[¶ 17]   We have recently answered several of the questions raised by this petition for review.   In particular, we have stated that: (1) by conditioning a professional guide license for a number of years, the Board has not granted a multi-year license, since such is beyond the Board's statutory powers;  and (2) the Board may impose licensing qualifications beyond the limited ones set forth in Wyo. Stat. Ann. § 23–2–412(a).   *Clark,* 2002 WY 24, ¶¶ 10–14, 39 P.3d at 1109;  *Wyoming Bd. of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶¶ 11–20, 30 P.3d 36, 41– 44 (Wyo.2001).   In addition, in a case of this nature, the licensing issues have become moot:

We stated in the case of *Smith Keller & Associates v. Dorr,* 4 P.3d 872, 876 (Wyo. 2000) (*citing Bard Ranch Co. v. Frederick,* 950 P.2d 564, 566 (Wyo.1997)):

"Our general law on justiciability provides that courts should not consider issues which have become moot.   *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n,* 693 P.2d 227, 233 (Wyo.1985).   We do not decide cases when a decision will have no effect or pertains only to matters that might arise in the future.   *McLain v. Anderson,* 933 P.2d 468, 472 (Wyo.1997).   A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy.   *Id.*   Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it.   *Id.; see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.,* 773 P.2d 911, 924–25 (Wyo. 1989)."

In *Sanchez v. State,* 982 P.2d 149, 150 (Wyo.1999), we further elaborated that a case is moot when the matter upon which a determination is sought presents no actual controversy or when a decision can have no practical effect.   We have also recognized the general rule that the issue of mootness constitutes a question of law and may be properly addressed by a court *sua sponte. Cooper v. Town of Pinedale,* 1 P.3d 1197, 1201 (Wyo.2000) (citing, in part, *Fund for Animals v. Babbitt,* 89 F.3d 128, 132 (2nd Cir.1996)); *see also Northern Utilities, Inc. v. Public Service Comm'n,* 617 P.2d 1079, 1085 (Wyo.1980).

\* \* \*

Any determination by this court relating to the bases upon which the Board denied the 1999 license is moot in that it would be wholly ineffectual and of no practical effect. Indeed, if this court were to rule that Clark should not have been denied his 1999 guide license, this determination would be completely inconsequential as the issuance of this license almost two years after the 1999 year has ended would be of no practical value to Clark. Similarly, if this court were to uphold the Board's action in denying Clark his 1999 guide license and reverse the ruling made by the district court, such would be equally of no worth at this late date.

*Clark,* 2002 WY 24, ¶¶ 9–15, 39 P.3d at 1108–09.

[¶ 18] One circumstance, however, leads us to conclude that the single question we proposed earlier herein should be answered:

May the Board condition the granting of a professional guide's license upon a licensee's agreement that he will voluntarily relinquish the license in the event that he is convicted of violating *any* state or federal law?

■ [¶ 19] The conditioning of any license granted to the appellant was for a five-year period, 1998–2002. It is likely that the appellant will apply for a 2002 license, and that the Board will attempt once again to impose the restriction that the appellant not violate *any* law. Perhaps that is even the reason the Board so carefully posited this as the only issue at the contested case hearing. At any rate, since the question has been fully developed and argued in this case, and since it is likely to arise again with the appellant, and likely with other applicants, we will address it.

[¶ 20] In a case substantially similar to the one now before this Court, although involving the revocation of a license rather than the denial of an application, we said the following about the authority of administrative agencies:

It is well established that:

"An administrative agency is limited in authority to powers legislatively delegated. 'Administrative agencies are crea-

tures of statute and their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim.' "

*Amoco Production Co. v. State Bd. of Equalization,* 12 P.3d 668, 673 (Wyo.2000) (citations omitted). "An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority." *Platte Development Co. v. State, Environmental Quality Council,* 966 P.2d 972, 975 (Wyo. 1998).

*Disciplinary Matter of Billings,* 2001 WY 81, ¶ 24, 30 P.3d 557, 568 (Wyo.2001). We then held that, where the statute provided for license revocation only for violation of a *significant* law pertaining to wildlife, the Board could not revoke a license for violation of *any* law pertaining to wildlife. *Id.* at ¶ 25, 30 P.3d at 569.

[¶ 21] The same principle applies in the instant case. Wyo. Stat. Ann. § 23–2–410(c)(iv) generally empowers the Board to impose "reasonable" restrictions and limitations to implement the act. More specifically, Wyo. Stat. Ann. § 23–2–412(e) requires license applicants to report convictions for (1) federal or state laws or regulations relating to wildlife or game and fish; (2) felonies; and (3) federal or state laws relating to criminal fraud. This subsection clearly indicates the legislature's intent as to what the Board may require in this regard. The Board is not free to add "(4) any federal or state law."

■ [¶ 22] We strictly construe statutory language when determining the powers granted to an administrative agency. *US West Communications, Inc. v. Wyoming Public Service Com'n,* 958 P.2d 371, 374 (Wyo.1998). The power of a board to grant or refuse a license must be based upon the qualifications of the applicant indicated in a statute. *Peterson v. Incorporated Town of Guernsey, In Platte County,* 26 Wyo. 272, 183 P. 645, 647 (1919). While licensing acts are passed for the public's protection, licensing requirements must be reasonable and not arbitrary. *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Bd.,* 898 P.2d 878, 885 (Wyo. 1995). Fundamentally, the licensing require-

ment must be rationally related to the applicant's fitness for the occupation. *Frank v. State By and Through Wyoming Bd. of Dental Examiners*, 965 P.2d 674, 679 (Wyo. 1998).[2] *See also Karan v. Adams*, 807 F.Supp. 900, 907 (D.Conn.1992); *Hughes v. Board of Architectural Examiners*, 17 Cal.4th 763, 72 Cal.Rptr.2d 624, 952 P.2d 641, 657 (1998) and *Indiana State Bd. of Registration and Ed. for Health Facility Administrators v. Cummings*, 180 Ind.App. 164, 387 N.E.2d 491, 496 (1979).

## CONCLUSION

 [¶ 23] For the reasons set forth above, most of the issues presented by the parties in this case are moot. As to the single issue identified by this Court for resolution, we conclude that the Board does not have the statutory authority to impose a restriction upon a professional guide's license that requires the licensee voluntarily to relinquish the license in the event he is convicted of violating any state or federal law. The Board's authority in such regard is limited to the convictions and bond forfeitures specified by the legislature in Wyo. Stat. Ann. § 23–2–412(e).

2. This Court has used the same rationale in invalidating a statute that authorized suspension of drivers' licenses for persons under the age of majority who illegally possessed alcohol, where the violation bore no rational relationship to driver's licensing. *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 167 (Wyo.1992). While *Johnson* had more to do with equal protection than it did with administrative law or statutory construction, the underlying concept of the state interfering with the exercise of a right or privilege is the same.