2005 WY 117

**In the Matter of Licensure of Jerry PENNY, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING MENTAL HEALTH PROFESSIONS LICENSING BOARD, Appellee (Respondent).**

No. 04–263.

Supreme Court of Wyoming.

Sept. 15, 2005.

Representing Appellant: Bill G. Hibbler, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; and Angela C. Dougherty, Senior Assistant Attorney General, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The district court affirmed an Order Denying Licensure issued by the Wyoming Mental Health Professions Licensing Board (Board). We also affirm.

## ISSUES

[¶ 2] Preliminarily, we must address an issue not raised by the parties. Wyo. Stat. Ann. § 33–38–107 (LexisNexis 2005) requires licenses issued under the Mental Health Professions Practice Act to be renewed biennially. Rules and Regulations

of the Mental Health Professions Licensing Board, ch. 8 § 1(c) (1997) (Board Rule) provides that licenses issued under the Act after July 1, 1997, expire on the licensee's birth date following the second anniversary of the issue date. On July 11, 2000, the appellant submitted an application for re-licensure as a clinical social worker. Had that application, which is the subject of this controversy, been approved, the resulting license would have expired on December 15, 2002. It is now 2005, which fact raises the question, not raised by the parties, of whether these issues are moot. "The applicable rule is that when we have notice of facts which have the effect of making any determination of a question unnecessary, or which would render any judgment we might pronounce ineffectual, the appeal should be dismissed." *State, Dept. of Revenue and Taxation, Motor Vehicle Div. v. Andrews*, 671 P.2d 1239, 1244 (Wyo.1983).

■ [¶ 3] In *Wyoming Bd. of Outfitters and Professional Guides v. Clark*, 2002 WY 24, ¶ 15, 39 P.3d 1106, 1109 (Wyo.2002), we dismissed an appeal for mootness where a present ruling could have no effect upon a professional license whose temporal life had passed. Certainly the same could be said here, where a license to practice clinical social work from 2000 to 2002 "would be of no practical value to" the appellant. *See Walker v. Board of County Com'rs, Albany County*, 644 P.2d 772, 773–74 (Wyo.1982) ("[a] cause will not be considered when a judgment rendered cannot be carried into effect."). We do not, however, follow this rule blindly and will, despite mootness caused by the passage of time, consider issues that may continue to arise or are of special significance. *Lineberger v. Wyoming State Bd. of Outfitters and Professional Guides*, 2002 WY 55, ¶ 1, 44 P.3d 56, 57 (Wyo.2002) (authority of Board to

impose conditions on a license); *Andrews*, 671 P.2d at 1244–45 (questions of sufficient public interest and of a continuing nature).

[¶ 4] We find the instant case to be similar to *Lineberger* and *Andrews*. In particular, the issues of whether an expert must establish the standard of care, and whether notice may be accomplished through the State's disclosure statement, have broad application beyond the specific facts of this case and are worthy of being addressed. Furthermore, licensing issues are peculiarly likely to evade judicial review due to their temporal nature. We will not, therefore, dismiss this appeal despite the fact that the issues could, technically, be moot. Instead, we will address the issues raised by the parties:

1. Was the law violated when the appellant's license renewal application was denied by an administrative staff person, rather than by the Board?

2. Was an incorrect expiration date used in denying the appellant's license renewal application?

3. Was expert testimony required to prove alleged licensing violations?

4. Was the denial of re-licensure supported by substantial evidence?

5. Was the appellant's right to due process of law violated when evidence was presented during the contested case hearing concerning matters not identified in the notice of hearing?

**FACTS**

[¶ 5] The appellant was licensed in Wyoming as a clinical social worker in 1994, and his license was renewed in 1996.[1] Wyo. Stat. Ann. § 33–38–107 requires licensees to submit a renewal application and fee biennially "at a time specified by the board." Board

---

1. Wyo. Stat. Ann. § 33–38–102(a)(v) (LexisNexis 2005):

   "Practice of clinical social work" means applying social work theory and methods to the diagnosis, treatment and prevention of psychosocial dysfunction, disability or impairment, including emotional and mental disorders. It is based on knowledge of one (1) or more theories of human development within a psychosocial context. The perspective of person-in-situation is central to professional social

work practice. Professional clinical social work includes but is not limited to interventions directed to interpersonal interactions, intrapsychic dynamics, and life support and management issues. Professional clinical social work services consist of assessment, diagnosis, treatment, including psychotherapy and counseling, client-centered advocacy, consultation and evaluation with individuals, families, groups, communities and organizations[.]

Rule, ch. 8, § 1(c), which became effective on November 4, 1997, provides that "licenses issued prior to July 1, 1997 shall expire on the Licensee's birth date following the current expiration date."

[¶ 6]  The appellant's birth date is December 15th.  On December 16, 1998, he mailed, and on December 17, 1998, the Board received his license renewal application.  The Board's executive director returned the renewal fee to the appellant along with a letter explaining that the license had expired, that it could not be renewed, and that re-licensure was in order.  The appellant testified that he did not receive the returned fee or accompanying letter.  He continued to work in Wyoming.

[¶ 7]  In October 1999, the Board received a citizen complaint (the first complaint) about the appellant's services in a court case.  After discussing the matter with a Board member, the executive director sent the appellant a letter informing him of the complaint, encouraging him to refrain from practicing clinical social work without a license, and requesting a response.  The letter was returned, unclaimed, by the postal service.  A similar letter was then mailed, with the appellant signing for its receipt on December 2, 1999.  Upon receiving no response from the appellant, the executive director sent yet another certified letter to the appellant in January 2000, seeking a response.  Once again, the letter was returned unclaimed.  The Board member assigned to investigate the first complaint then authorized employment of a private investigator, Gene Giffin, to assist in locating the appellant.  Giffin found and talked to the appellant, who, according to the executive director, provided the following explanation for his situation:

Mr. Giffin also reported that [the appellant] had informed him that when he received his renewal application back in the mail, that he contacted the Board office and spoke to a male who answered the phone, didn't recall his name, but that the person who answered the phone told him that he would take care of it.  Then Mr. Giffin informed [the appellant] that his license was not valid.

[The appellant] asked Mr. Giffin how he could—what should he do.  Mr. Giffin suggested that [the appellant] contact the Board office immediately to ask about what he can do to get his license back.

[¶ 8]  Giffin interviewed the appellant on March 6, 2000.  The following week, the appellant contacted the Board's executive director and told her that he had never received the October 1999 letter concerning the first complaint.  A copy of the letter was then sent to him, and he responded on March 27, 2000.  In his response, the appellant explained that his practice was limited to trial consulting, mediation, conflict resolution, and forensic social work, none of which fit the definition of "clinical social work."  The Board reviewed the response at its next meeting and, on May 30, 2000, the executive director sent the appellant a letter stating that the Board had determined that he was practicing clinical social work, and that he should cease doing so until he was again licensed.

[¶ 9]  On July 11, 2000, the appellant submitted an application for re-licensure.  That application was returned to him as incomplete.  The appellant corrected the deficiencies and re-submitted the application.  In the meantime, however, the Board received a second complaint.  Thereafter, the Board contacted the appellant four times in an effort to obtain his records concerning the matter underlying this second complaint, for the purpose of determining whether he was engaged in clinical social work.  Those efforts were not successful.  After reviewing the appellant's application materials, the Board instructed the executive director to send the appellant a letter denying his application.  The findings and conclusions of that denial letter can be summarized as follows:

1.  In October 1999, the appellant fraudulently represented to the district court, in the matter involving the first complaint, that he was a licensed counselor in the State of Wyoming.

2.  Despite notification that his license had expired, the appellant continued to practice as a counselor until criminal charges were brought against him.

3. In an October 2000 meeting with the Board, the appellant and his attorney were told that his continuing education was deficient, that the Board was concerned with his inability to locate his files involving the second complaint, and that he had practiced for nearly two years without a license.

4. His application was being denied because he had practiced without a license, in violation of Wyo. Stat. Ann. § 33–38–110(a)(i) and (iii) (LexisNexis 2005) and Board Rule, ch. 12, § 2(a)(iii), and because his inability to produce his records concerning the second complaint constituted gross incompetence or malpractice, in violation of Wyo. Stat. Ann. § 33–38–110(a)(iii) and Board Rule, ch. 12, § 2(a)(vii) and ch. 11, § 2.[2]

[¶ 10] On August 21, 2001, the appellant requested a hearing before the Board. The hearing was set for October 25, 2002.[3] The Board twice granted the appellant's motions for a continuance, but denied a third motion, leaving the hearing set for July 25, 2003. That date was vacated, however, because the Board could not meet quorum requirements. The hearing, at which both parties presented evidence, finally took place on October 23–24, 2003. Thereafter, the Board issued a detailed order denying re-licensure. The appellant filed a petition for review of that order in the district court. It is from the district court's affirmance of the Board's order that the appellant now appeals.

[¶ 11] Finally, we will note that, during the pendency of the appellant's re-licensure application, the Board received two additional complaints. On July 10, 2002, the Board received a letter (the third complaint) alleging that the appellant was providing mental health counseling, without a license, in a divorce visitation situation, and that he failed to return telephone calls or cooperate with the court-ordered visitation supervisor. In a complaint (the fourth complaint) received on August 22, 2002, the complainant alleged that the appellant failed or refused to provide periodic billing statements for counseling her children.

## STANDARD OF REVIEW

[¶ 12] We cannot do better than to reiterate the applicable standard of review as we recently stated it in *Davis v. City of Cheyenne*, 2004 WY 43, ¶¶ 6–7, 88 P.3d 481, 484–85 (Wyo.2004):

We review agency action following contested case hearings in accordance with Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2003), which provides:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

[ (B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or]

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

*State ex rel. Department of Transportation v. Legarda*, 2003 WY 130, ¶ 9, 77 P.3d

---

2. There is no Wyo. Stat. Ann. § 33–38–110(a)(iii). It is presumed that this reference should be to Wyo. Stat. Ann. § 33–38–110(c)(iv), which lists "[g]ross incompetence and malpractice" as grounds for negative board action in regard to licensure.

3. Neither the record nor the briefs of the parties fully explain this fourteen month delay, and the delay has not been made an issue in this appeal.

708, ¶ 9 (Wyo.2003). Our review is also governed by the following standards:

"We do not afford any special deference to the district court's decision when we review a matter initiated before an administrative agency. Rather, this court reviews the case as if it came directly from the administrative agency. Our review must focus on the evidence and consider the reasonableness of the agency's exercise of judgment while determining if the agency committed any errors of law. If the agency committed any errors of law, this court must correct them.

Further, in appeals where both parties submit evidence at the administrative hearing, appellate review is limited to application of the substantial evidence test. This court is required to review the entire record in making its ultimate determination on appeal. The substantial evidence test to be applied is as follows:

' "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman [v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91, ¶ 12, 49 P.3d 163, ¶ 12 (Wyo.2002) ] (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)).'

Even when the factual findings are found to be sufficient under the substantial evidence test, . . . this court may be required to apply the arbitrary and capricious standard as a "safety net" to catch other agency action [that] prejudiced a party's substantial right to the administrative proceeding or [that]

might be contrary to the other WAPA review standards."

*Id.,* ¶ 10. To survive judicial review, the record of a contested agency action must contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions. *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91, ¶ 16, 49 P.3d 163, ¶ 16 (Wyo.2002). Similarly, a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision. Absent such information, the agency decision must be set aside. *Id.*

Of further relevance to our review, we have said:

"In contested cases conducted before administrative agencies, the deference that normally is accorded the findings of fact by a trial court is extended to the administrative agency, and we do not adjust the decision of the agency unless it is clearly contrary to the overwhelming weight of the evidence on record. This is so because, in such an instance, the administrative body is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses."

*Id.,* ¶ 26.

In contrast, "[a] hearing examiner's conclusions of law are afforded no special deference and will be affirmed only if truly in accordance with law." *Hermosillo v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2002 WY 175, ¶ 6, 58 P.3d 924, 926 (Wyo.2002). And finally, agency action is arbitrary and capricious if it is "willful and unreasonable, without consideration and in disregard of the facts and circumstances." *Matter of Corman,* 909 P.2d 966, 971 (Wyo. 1996).

▰▰▰▰ [¶ 13] In reviewing administrative agency action, we are also mindful of the allocation of the burden of proof at the contested case hearing:

"Allocation of the burden of proof is a matter of law." *Corman v. State ex rel. Wyoming Workers' Compensation Divi-*

*sion,* 909 P.2d 966, 970 (Wyo.1996). The general rule in administrative law is that, unless a statute otherwise assigns the burden of proof, the proponent of an order has the burden of proof. Bernard Schwartz, *Administrative Law* § 7.8 (2d ed.1984). "In general, an agency is the proponent of its orders, while an applicant for benefits or for a license is the proponent in eligibility determinations." 4 Jacob A. Stein et al., *Administrative Law* § 24.02 at 24–21 (1987).

*JM v. Department of Family Services,* 922 P.2d 219, 221 (Wyo.1996). The effect of this allocation of the burden of proof is that, once a license applicant establishes his or her qualifications for licensure, the burden of proof shifts to the agency to go forward with its evidence justifying denial of the license, but the burden of persuading the agency that its grounds for denial were insufficient remains with the applicant. *Wyoming Bd. of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶ 23, 30 P.3d 36, 44–45 (Wyo. 2001). The agency's evidence supporting denial of a professional license must be clear and convincing. *State ex rel. Dept. of Transp. v. Legarda,* 2003 WY 130, ¶ 15, 77 P.3d 708, 713 (Wyo.2003); *Disciplinary Matter of Billings,* 2001 WY 81, ¶ 20, 30 P.3d 557, 567 (Wyo.2001) (*Billings I* ).

## DISCUSSION

*Was the law violated when the appellant's license renewal application was denied by an administrative staff person, rather than by the Board?*

[¶ 14] The appellant filed two license applications—a renewal application submitted on December 16, 1998, and a re-licensure application submitted July 11, 2000. The former is the subject of the present issue. The Board's executive director testified that license applications are reviewed by staff members and are submitted to the Board for consideration only if deemed "complete." She further testified that, without Board action on the matter, she returned the appellant's renewal application because it was postmarked one day too late—meaning that it had expired and could no longer be renewed. The appellant characterizes this action as denial of the license application, and contends that such denial statutorily can only be by Board action.

[¶ 15] We will not further consider this issue because it was not properly preserved for judicial review. The administrative action of which the appellant complains—return of his license renewal application as untimely by a staff member—took place on January 6, 1999. Rather than exhaust his administrative remedies in response to that action, and rather than petitioning the district court for review thereof, the appellant pursued re-licensure through a separate application. It is too late now, in the judicial review of the denial of that second application, to contest return of the previous application as untimely. *See* Wyo. Stat. Ann. § 16–3–114(a) (LexisNexis 2005) and W.R.A.P. 12.

*Was an incorrect expiration date used in denying the appellant's license renewal application?*

[¶ 16] The Board's rules, as amended in November 1997, provide that "licenses issued prior to July 1, 1997 shall expire on the Licensee's birth date following the current expiration date." Board Rule, ch. 8, § 1(c). The appellant interprets this language to mean that the license issued to him in 1996 did not expire on his birthday in December 1998, but in December 1999, meaning that his renewal application was timely. For the reasons set forth above, we will not further consider this contention.

*Was expert testimony required to prove alleged licensing violations?*

[¶ 17] A review of the facts is necessary to address this legal question. The appellant was licensed to practice clinical social work, but that license expired. His application for re-licensure was denied on the ground that he had knowingly practiced clinical social work without a license, and that his inability to locate a client's file evidenced gross incompetence or malpractice, both in violation of applicable statutes and administrative rules.

[¶ 18] A Board hearing was convened to consider the appellant's request for reconsid-

eration of the re-licensure denial. The appellant testified on his own behalf, and called an attorney to testify about his dealings with the appellant in court-related matters. The State called the four persons who had filed complaints with the Board, plus the Board's executive director and a staff member. Finally, the State called Laura Schmid–Pizzato, a licensed clinical social worker and the current Board chairman. She testified that the appellant knowingly practiced clinical social work without a license, a statutory violation, and that he violated the profession's code of ethics when he could not locate the client's confidential file. In presenting these opinions, she opined that the work the appellant performed in the matters underlying the four complaints was regulated practice that required a license.

[¶ 19] After Ms. Schmid–Pizzato testified on direct examination, and after she was accepted as an expert by the hearing examiner, the appellant objected to her testimony on the ground that she should not be allowed to testify as an expert witness before the very board of which she was a member. The objection was overruled and appellant's counsel began cross-examination. That examination, however, was interrupted by the Board's attorney, who asked to speak privately with the Board. After a brief recess, the following colloquy occurred on the record:

THE HEARING EXAMINER: Let's go back on the record. Ms. Dougherty, did you have anything you would like to state on the record?

MS. DOUGHERTY: I did. The Board has directed me, in light of the objection raised by Mr. Hibbler with regard to the expert testimony by Ms. Pizzato, the Board has directed me to indicate that they are satisfied enough with Ms. Pizzato's questions, I believe that Mr. Nelson was done with his questioning, and they're certainly willing to listen to any testimony that Mr. Hibbler may have in cross-examination of that, of that other format, but because of the case law in place, the Billings decision, indicating that the Board cannot rely upon its own expertise in formulating care issues, they're satisfied that

Ms. Pizzato should not be qualified as an expert, and they want to protect themselves from any reversible error at this point in considering her testimony from that expert standpoint.

THE HEARING EXAMINER: Since that is the judgment of the Board, that will be the ruling for this matter; she will not be qualified as an expert witness. I don't believe she has answered any questions as an expert, and maybe, Merissa, you could help.

(Off the record.)

THE HEARING EXAMINER: I will note for the record that the only question asked after Ms. Pizzato was offered up as an expert, was whether she was familiar with the Mental Health Licensing Act, to which she answered yes. So with that in mind, do you have any cross examination of this witness?

MR. HIBBLER: First I would just move to strike the question—or the answer to that, if she was asked as an expert, and the answer shouldn't stand.

THE HEARING EXAMINER: All right. That answer is struck. You can disregard her answer to that question.

MR. HIBBLER: And second thing, I don't have any questions for Ms. Pizzato.

[¶ 20] Because of the rather unique way in which this issue developed, we will take a somewhat circuitous route toward answering the actual question presented. We begin with the appellant's objection to Ms. Schmid–Pizzato's testimony:

MR. HIBBLER: I want to put an objection on the record, that Ms. Pizzato is not qualified to act as an expert in this hearing, for one of the reasons, I don't know that she has demonstrated any sort of—and she very well may be, but the record's not—doesn't contain her experience to qualify for that. But more importantly, being a board member, I don't believe that she's able to act as an expert witness wherein her same board is sitting. That's my objection.

[¶ 21] As can be seen, this was a two-pronged objection: first, that the witness had not properly been qualified as an expert, and

second, that a board member should not be an expert witness before her own board. The first part of the objection was satisfied through additional foundation questioning. The second part of the objection was overruled by the hearing examiner and Ms. Schmid–Pizzato was allowed to testify. Her testimony was interrupted as described above and, based upon the Board's instructions, the hearing examiner withdrew qualification of Ms. Schmid–Pizzato as an expert. The interesting result of the objection and its resolution, therefore, was to leave Ms. Schmid–Pizzato's testimony on the record, but to strip it of its expert designation. The appellant did not further object, and no issue is now presented as to the propriety of that resolution.

[¶ 22]   In the hope of clearing up apparent confusion, we are inclined to address one more aspect of these curious circumstances before we get to the actual question presented. The Board's attorney sought and obtained withdrawal of Ms. Schmid–Pizzato's expert witness status because of "the Billings decision, indicating that the Board cannot rely upon its own expertise in formulating care issues[.]"   Counsel's reference undoubtedly is to *Billings I*, 2001 WY 81, ¶¶ 17–18, 30 P.3d at 566–67 (footnote omitted), where we held as follows:

Finding number five suffers from other problems.   There, the Board found that Billings had willfully endangered the health and safety of Dan Nutsch by permitting him to be injured while caring for livestock "which should have been properly cared for by employees of John R. Billings."   In addition to challenging the sufficiency of this finding, Billings also argues it lacks record support.   In Billings' view, this finding amounts to a conclusion that his conduct fell below the standard of care for those in his industry.   He contends that, because no expert testimony on the issue was presented to the Board, the record does not support the finding.   Obviously, clients on an outfitted hunting trip must participate in the adventure.   The extent of such participation, however, is not something this court has within its knowledge.

Perhaps the Board, which consists of a number of persons who would undoubtedly qualify as experts in the field of outfitting, used its expertise to determine that Billings' actions failed to meet his duty of care as an outfitter.   However, our decision in *Devous v. State Board of Medical Examiners*, 845 P.2d 408, 418 (Wyo.1993), does not permit the Board to do that:

"Turning then to the appeal of the Board with respect to the decision of the district court to set aside certain statutory grounds for failure of substantial evidence, we affirm the district court in that regard.   The crux of the issue is whether the record must include expert testimony with respect to those statutory grounds, or whether we must acknowledge and accept the expertise of the Board members in establishing standards that demonstrate infringement of the statute.   There was no expert testimony offered at the hearing to establish standards with respect to these statutory grounds.   If judicial review has any purpose, it must be exercised by objectively evaluating evidence in the record. There is no way that a judicial review could reach the subjective determination of standards by individual members of the Board.   Consequently, in order to maintain the integrity of judicial review, we conclude it is necessary that, with respect to the violations that were asserted under Wyo. Stat. § 33–26–402(a)(xv), (xviii), and (xxvi), expert testimony in the record was required and, lacking such testimony, there is no substantial evidence to sustain those allegations."

In this case, if the Board intends to rely on a finding that Billings' conduct regarding the mule kick incident fell below the standard of care for those in his industry, the Board should rely on expert testimony in making such a finding.   In this case, it would not have been difficult for the Board to obtain such expert testimony, as many of the witnesses would probably have qualified as experts in this field due to their "knowledge, skill, experience, training, or education."   W.R.E. 702.   Regardless, absent any indication in its findings that the

Board is relying on expert testimony, we conclude that the finding is insufficient to permit review.

[¶ 23] What *Billings I*, the review of a license revocation, and *Devous v. Wyoming State Bd. of Medical Examiners*, 845 P.2d 408 (Wyo.1993), the review of a license suspension, stand for is the proposition that when a licensing board suspends or revokes a professional license for conduct that allegedly falls below the standard of care for licensees in that profession, there must be record evidence establishing the standard of care. Stated differently, judicial review is impossible if board members, rather than relying upon a standard of care established by the evidence, rely upon their own respective unidentified and unarticulated standards.

[¶ 24] This rule of law was misinterpreted before the Board to mean that a board member may not testify as an expert in front of the board of which she is a member. That question is not now before us, and we need not answer it herein. The net effect of the misinterpretation before the Board, however, was to eliminate any expert testimony in support of the license denial. That leads to the question that is now before this Court: was expert testimony required under these circumstances to prove the alleged licensing violations?

[¶ 25] Citing *JM*, 922 P.2d at 221, the appellant contends that, once he established his qualifications for licensure under Wyo. Stat. Ann. § 33–38–106(a)(i)–(v) (LexisNexis 2005),[4] the burden shifted to the State to prove, by clear and convincing evidence, the alleged licensing act or administrative rule violations justifying denial. Then, citing *Billings I* and *Devous*, the appellant argues that expert testimony was required to prove that he violated Wyo. Stat. Ann. § 33–38–102(a)(iii) and (v) (LexisNexis 2005) by representing himself as a clinical social worker and practicing clinical social work without a license.[5] For example, the appellant testified that he conducts mediation, alternative dispute resolution, and forensic evaluations, and that there was no expert testimony stating that those services were "clinical social work." Further, the appellant contends that the Board cannot properly make a finding of an ethical violation based upon the inability to locate a file, without there first having been expert testimony establishing the ethical standard. Finally, the appellant argues that this case is distinguishable from *Billings v. Wyoming Bd. of Outfitters and Professional Guides*, 2004 WY 42, ¶¶ 51–52, 88 P.3d 455, 474–75 (Wyo.2004) (*Billings II*), where we concluded that expert testimony was not required to prove the professional standard and a breach thereof where an outfitter willfully abandoned a client on a wilderness trail, because

[n]either the nature of the violation, nor the facts underlying it, involves subject matter "not within our knowledge" or requiring additional expert testimony. The state of the record is such that in reviewing the issue, we are not required merely to accept the Board's subjective expertise for a standard that demonstrates infringement of the statute.

---

4. Wyo. Stat. Ann. § 33–38–106(a)(i)–(v) require "satisfactory evidence" that an applicant has reached the age of majority, has no felony convictions and no misdemeanor convictions involving moral turpitude, has a master's or doctorate degree in the appropriate discipline, has demonstrated knowledge in an appropriate field by passing a standard examination, and has completed 3,000 hours of supervised clinical experience.

5. Wyo. Stat. Ann. § 33–38–102(a)(v) is quoted, *supra*, at n. 1. Wyo. Stat. Ann. § 33–38–102(a)(iii) provides as follows:

"Licensed professional counselor, (LPC), licensed marriage and family therapist, (LMFT), licensed clinical social worker, (LCSW) and licensed addictions therapist, (LAT)," mean persons who represent themselves to the public by any title or description of psychotherapy services incorporating the words "professional counselor", "marriage and family therapist", "clinical social worker", or "addictions therapist", who offer to render professional services in these fields to individuals, groups, organizations, corporations, institutions, government agencies, or the general public for compensation, implying that they are licensed and trained, experienced or expert in one (1) or more of these fields of practice and who hold a valid license to engage in the practice of one (1) or more of these specializations. These persons may practice independent of supervision[.]

[¶ 26] The State's response to these arguments begins with Wyo. Stat. Ann. § 33–38–110(c), which provides that the Board may "refuse to renew, or may deny, suspend, revoke or otherwise restrict licensure . . . for any of the following causes: . . . (iii) Unprofessional or unethical conduct; (iv) Gross incompetence and malpractice; . . . (ix) Willful violation of any provision of this act[.]" Next, the State contends that this was a licensing proceeding, at which the appellant bore the burden of proving his qualifications, rather than a disciplinary proceeding, at which the State bore the burden of proving license violations. It is the State's position that, unlike the situation in *Billings I*, expert testimony is not required to establish any of these violations because the Board relied upon objective standards set forth in its regulations. And finally, the State opines that it simply cannot be that, in all licensing proceedings, the Board must hire an expert to tell it whether the applicant is, or is not, qualified for licensure.

[¶ 27] Confident in the rectitude of its position, the State cites no authority, other than to say that *Billings I* does not apply. The appellant, on the other hand, in addition to reliance upon *Billings I* and *Devous*, cites *Dorr v. Wyoming Bd. of Certified Public Accountants*, 2001 WY 37, ¶ 8, 21 P.3d 735, 741 (Wyo.2001), for the proposition that violations of statutory professional standards of care must be proved by the licensing agency by clear and convincing evidence. Further, the appellant contends that misallocation of the burden of proof, being an error of law, requires reversal. *See JM*, 922 P.2d at 221.

[¶ 28] To address these issues, we must first look at what the Board did. The purpose of the contested case hearing was to reconsider licensure after the initial denial of the re-licensure application. That earlier denial was not based upon a finding that the appellant lacked statutory qualifications, but upon a finding that he had violated professional standards of conduct set by statute and administrative rule. Specifically, re-licensure was denied on the ground that the appellant had violated Wyo. Stat. Ann. § 33–38–110(a)(i) by engaging in clinical social work without a license, and that he had violated Wyo. Stat. Ann. § 33–38–110(c)(iii) by engaging in unethical and unprofessional conduct, as defined by the applicable administrative rule. There were two parts to the latter conclusion: first, that the appellant represented himself as a licensed clinical social worker, and second, that he evidenced gross incompetence by the inability to produce a client's file.[6]

[¶ 29] Before we discuss the facts found and conclusions of law reached by the Board in its review of the earlier denial, we will briefly mention the appellant's rather generalized contention that, at the contested case hearing, the Board misallocated the burden of proof. Having reviewed the entire record and the Order Denying Licensure, we are convinced that, despite the statement in the order that the appellant "has not proven he is entitled to licensure or that the prior Board erred when it denied him licensure[,]" it is clear from the conclusions of law contained in the order that the Board required the State to prove the alleged violations by clear and convincing evidence. As is the law, the Board required the appellant to prove he was qualified for licensure, but then required the State to go forward with clear and convincing evidence justifying denial of the license. *See Clark*, 2002 WY 24, 39 P.3d 1106. There was no error in regard to the burden of proof.

[¶ 30] Getting now to the issue at hand—was expert testimony required to prove the alleged violations? The relevant findings of fact and conclusions of law are:

1. In Findings of Fact 3 and 4, the Board found that in October 1999, in the matter

---

6. Board Rule, ch. 12, § 2(a)(iii) defines as unethical conduct "[r]epresentation of oneself as licensed to engage in private practice in professional counseling, clinical social work, marriage and family therapy and or addictions therapy without a license or certification[.]" Board Rule, ch. 12, § 2(a)(vii) defines as unethical conduct "[g]ross incompetence or malpractice," and Board Rule, ch. 11, § 2(c)(ii) and (ix) require licensees to justify services provided and to maintain client confidentiality. Furthermore, Board Rule, ch. 11, § 2(b)(iii) adopts and incorporates into the rules and regulations the Code of Ethics of the National Association of Social Workers, a copy of which is appended to the rules and regulations and is included in the record.

underlying the first complaint, the appellant had counseled a child in a court custody matter, had testified that he was a licensed social worker, had introduced in court a resumé that stated he was a licensed clinical social worker in Wyoming, had held himself out to the public as a licensed counselor, and had provided counseling services when he held no valid license to provide such services.

2. In Finding of Fact 6, the Board found that Investigator Giffin told the appellant on March 6, 2000, that the appellant did not have a license to practice clinical social work, and further found that the appellant's assertion that he did not receive the executive director's letter of October 8, 1999, informing him of the first complaint "flies in the face of" his signature on the certified mail receipt card.

3. In Findings of Fact 8 and 15, the Board found that its staff member credibly testified that, contrary to the appellant's assertions, he did not tell the appellant over the telephone that he would issue the appellant a license or renew the appellant's license.

4. In Finding of Fact 9, the Board found that, in the matter underlying the second complaint, the appellant's records had not been turned over to the Board, despite four requests.

5. In Finding of Fact 12, the Board found that, in the matter underlying the third complaint, the appellant had, after July 26, 2001, and with knowledge that he was not licensed, provided counseling services and billed an insurance company for those services.

6. In Finding of Fact 13, the Board found that, in the matter underlying the fourth complaint, the appellant had, from August 2001 through May 2002, after notice that his application for licensure had been denied, performed counseling services for a woman and her three children.

7. Findings of Fact 16–18 contain the Board's central findings, and they will be set forth here at length:

16. This Board finds that [the appellant's] testimony was not credible. Even if the Board found plausible [the appellant's] assertion that he called the Board office

and spoke to a male person after he received his December 1998 renewal application returned to him, [the appellant] knew in January 1999 that his license had expired. [The appellant] is required to conspicuously display his license as a clinical social worker and the Board has never sent him a license since his expired in December 1998. [The appellant] also admitted he knew in October 1999 his license was expired after testifying in a court matter. Regardless, [the appellant] certainly knew he held no valid license to practice social work in December 1999 when he signed for a certified letter from the Board requesting he cease and desist from counseling without a license, yet he continued to provide counseling services and continued to bill Blue Cross and Blue Shield for those services. Even after the Board notified [the appellant] on July 26, 2001 that his July 2000 application had been denied, [the appellant] continued to provide counseling services and hold himself out to the public as a licensed clinical social worker. [The appellant] denied providing counseling services, yet billed clients and insurance companies using billing codes identifying individual or family counseling as the service he provided.... [The appellant's] explanation that "people" from insurance companies told him to bill that way even though he was not providing counseling services lacks any credibility whatsoever.

17. [The appellant's] alternative explanation that he was not providing services that required licensure also lacks any credibility whatsoever. [The appellant] testified he merely helped people get through the litigation process and provided dispute resolution, as well as "mediating" conflicts between people. [The appellant] also denied he engaged in the activities listed in the Wyoming Statutes defining professional social work services, such as assessment, diagnosis, treatment including counseling, client-centered advocacy, consultation and evaluation of individuals and families.... Yet [the appellant] admitted he made diagnoses from the Diagnostic and Statistical Manual, Fourth Edition (DSM–IV).... [The appellant] also represents himself as

a counselor in the yellow pages of the phone book.... Although termed by [the appellant] as "conflict resolution" and "mediation" services, it is clear the clients that treated with [the appellant] believed they were receiving counseling services and that is exactly what [the appellant] was providing, treating individuals over the course of months and years.

18. [The appellant's] testimony under oath was disingenuous and not credible and his conduct before this Board was contrary to the integrity of the mental health profession. This Board finds [the appellant] was providing counseling services that required licensure. The Board further finds that [the appellant] provided those services for which he billed as counseling, at a time when he did not hold a license to do so.

8. The Board's primary conclusions of law are found in Conclusion of Law 10:

10. The Board's investigative committee member has proven, by clear and convincing evidence, that allowing [the appellant] to hold a Wyoming license as a clinical social worker would not be in the public's interest. The Board's investigative committee member proved, by clear and convincing evidence, that [the appellant] violated all three of the listed provisions in Wyo. Stat. Ann. § 33-38-110(c)(iii), (ix), and (xi) (Lexis[Nexis] 2003). First, [the appellant] failed to make timely application for the renewal of his license by December 15, 1998 as set forth in Wyo. Stat. Ann. § 33-38-110(c)(xi) (Lexis[Nexis] 2003). In addition, [the appellant] acted unprofessionally and unethically in violation of Wyo. Stat. Ann. § 33-38-110(c)(iii) (Lexis[Nexis] 2003) by practicing clinical social work from December 15, 1998 to the time of hearing without a license. [The appellant] also unprofessionally and unethically billed insurance companies for those professional services despite his protestations

at hearing that he was merely providing conflict resolution, trial consultation and mediation. The overwhelming evidence presented by the State showed [the appellant] was acting as a clinical social worker and practicing clinical social work as defined by Wyo. Stat. Ann. § 33-38-102(a)(iii) and (v) (Lexis[Nexis] 2003) in that he clearly provided assessments, counseled individuals and made diagnoses in accordance with the DSM-IV Manual when he was not licensed to perform those services in violation of Wyo. Stat. Ann. § 33-38-102(a) (Lexis[Nexis] 2003). The overwhelming evidence also supports the conclusion that [the appellant] knew he was unlicensed and thus committed willful violations of this act as set forth in [Wyo.] Stat. Ann. § 33-38-110(c)(ix) (Lexis[Nexis] 2003). Lastly, [the appellant] did not produce a client file as requested by the Board, and later admitted he lost the file. [The appellant's] conduct in losing a client file was both unprofessional and unethical pursuant to the Board's Rules and Regulations as set forth in further detail below.

9. In Conclusions of Law 11-18, the Board detailed its conclusion that the appellant's conduct had violated ethical and professional standards, in violation of specific regulatory provisions. In doing so, the Board first noted the requirement of *Billings I*, 2001 WY 81, ¶ 29, 30 P.3d at 570 (*quoting Matter of Bessemer Mt.*, 856 P.2d 450, 454 (Wyo.1993)), that its decisions be based upon established standards. Next, the Board noted that it had adopted such rules pursuant to Wyo. Stat. Ann. § 33-38-105(a) (LexisNexis 2003).[7]

10. In Conclusions of Law 12-18, which are set out below, the Board applied the established rules to the appellant's conduct in a step-by-step process:

12. In accordance with the above statute, the Mental Health Professions Licens-

**7.** Wyo. Stat. Ann. § 33-38-105(a) provides:

The board shall adopt rules not inconsistent with this act or the laws of this state that are reasonable and necessary to administer this act. A subcommittee from each discipline shall be requested to draft the recommended

rules and regulations for that particular discipline and shall submit them to the full board for action. The rules shall be adopted in accordance with the provisions of the Wyoming Administrative Procedure Act [§ 16-3-101 et seq.].

ing Board's Rules and Regulations, Ch. 12, §§ 1 and 2(a)(i) and (b) (February 2000) states as follows:

**Section 1. Board Authorization.** The Board is authorized to refuse to renew, or may deny, suspend, revoke or otherwise restrict the license or certification of any person violating provisions of the Act pursuant to W.S. 33–38–110.

**Section 2. Grounds.** The Board may also take action for unprofessional conduct.

(a) Unethical conduct shall include, but is not limited to:

(i) Willful violation of any provision of these Rules;

. . .

(ii) Representation of oneself as licensed to engage in private practice in professional counseling, clinical social work . . . without a license or certification;

. . .

(vi) Soliciting clients by any form of false or misleading communication;

. . .

(vii) Gross incompetence or malpractice.

(b) Unethical conduct shall be a violation of any provision of the adopted Ethical Standards as set forth in Chapter 11 of these Rules.

13. Chapter 11, § 2 of the Board's Rules provides the following in relevant part:

**Section 2. Grounds.** The following ethical standards are adopted and incorporated herein by the Board:

b. Ethical standards incorporate and are based on the Code of Ethics and Professional Standards of the professional organizations. The published Code of Ethics and Professional Standards of the appropriate professional organization are adopted by reference herein and shall be used by the Licensee and Certificate and the Board to provide additional guidelines to ethical standards. These Codes of Ethics and Professional Standards are:

(iii) For Licensed Clinical Social Workers, Professional Clinical Social Workers, and Certified Social Work-

ers—the National Association of Social Workers, "Code of Ethics" incorporated as Appendix E.

. . .

(vii) Ensure that clients are aware of fees and billing arrangements before rendering services.

. . .

(ix) Respect the privacy of clients and hold in confidence all information obtained in the course of professional service.

. . .

(xv) When advertising their services to the public, ensure that such advertising is neither fraudulent nor misleading.

. . .

(xxi) Respond to all requests for information and all other correspondence from the Board.

14. The Mental Health Professions Licensing Board's Rules and Regulations, Appendix E, National Association of Social Workers, Code of Ethics, §§ 1.01, 1.04, 1.07, 1.08, 3.05, 4.04, 4.06, and 5.01 (February 2000) . . ., states in relevant part as follows:

**1.01 Commitment to Clients**

Social workers' primary responsibility is to promote the well-being of clients. In general, clients' interests are primary. However, social workers' responsibility to the larger society or specific legal obligations may on limited occasions supersede the loyalty owed clients, and clients should be so advised. (Examples include when a social worker is required by law to report that a client has abused a child or has threatened to harm self or others.)

**1.04 Competence**

(a) Social workers should provide services and represent themselves as competent only within the boundaries of their education, training, license, certification. . . .

**1.07 Privacy and Confidentiality**

(c) Social workers should protect the confidentiality of all information ob-

tained in the course of professional service, except for compelling professional reasons. . . .

### 1.08 Access to Records

(a) Social workers should provide clients with reasonable access to records concerning the client. . . .

### 4.04 Dishonesty, Fraud, and Deception

Social workers should not participate in, condone, or be associated with dishonesty, fraud, or deception.

### 4.06 Misrepresentation

(a) Social workers should make clear distinctions between statements made and actions engaged in as a private individual and as a representative of the social work profession. . . .

### 5.01 Integrity of the Profession

(a) Social workers should work toward the maintenance and promotion of high standards of practice.

15. [The appellant] acted unprofessionally and unethically by knowingly and willfully practicing clinical social work from December 15, 1998 to the time of hearing without a license in violation of the following regulatory provisions: Chapter 12, Sections 2(a)(i), (iii), and 2(b) and Chapter 11, Section 2(b)(iii) which incorporates the National Association of Social Workers, Code of Ethics as Appendix E and provides that a social worker should only provide services and represent himself as competent within the confines of his license or certification. [The appellant] had no license from December 15, 1998 to the time of hearing and therefore could not provide assessments, counsel individuals and make diagnoses in accordance with the DSM–IV Manual when he was not licensed to perform those services.

16. [The appellant] acted unprofessionally and unethically by making numerous misrepresentations about the services he provided in violation of several regulatory provisions:

- Though [the appellant] knew his license had expired, he held himself out as a licensed clinical social worker in the yellow pages of the phone book.

Such conduct was unethical and unprofessional as set forth in Chapter 12, Sections 2(a)(i), (ii), (iv) and (b); Chapter 11, Sections 2(b)(xv); and Chapter 11, Section 2(b)(iii) which incorporates (as Appendix E of the Board's Rules and Regulations) the National Association of Social Workers, Code of Ethics. Specifically, provisions 4.04 and 4.06 of the Code of Ethics condemn the type of dishonesty, fraud, deception and misrepresentation [the appellant's] yellow page advertisement demonstrates.

- By willfully and knowingly misrepresenting to a court of law in October, 1999, that he was a licensed social worker when he knew his license had expired, [the appellant] acted unprofessionally and unethically pursuant to Chapter 12, Sections 2(a)(i), (iii) and (b); and Chapter 11, Section 2(b)(iii) which incorporates (as Appendix E of the Board's Rules and Regulations) the National Association of Social Workers, Code of Ethics. Specifically, [the appellant] failed to fulfill his responsibilities established in provisions 1.01, 1.04, 4.04, 4.06, and 5.01 of the Code of Ethics.

- [The appellant] charged his clients for services he was not licensed to perform. Specifically, he billed his clients' insurance companies for unlicensed professional services. In so doing, he deceived both the client and the clients' insurance companies. Such conduct was unethical and unprofessional pursuant to Chapter 12, Sections 2(a)(i), (iii), and (b) as well as Chapter 11, Section 2(vii) which requires [the appellant] ensure his clients are aware of fees and billing arrangements before he rendered his services. The insurance documentation clearly indicates [the appellant] was providing professional services to clients when he was unlicensed to do so. While [the appellant] asserted such services constituted conflict resolution, trial consultation and mediation, neither the clients, nor their insurance companies, were informed of

limited services [the appellant] insisted he was providing. Instead, [the appellant] billed for the clinical social work services he was providing without a license. In so doing, he failed to fulfill his responsibilities pursuant to Chapter 11, Section 2(b)(iii) which incorporates (as Appendix E of the Board's Rules and Regulations) the National Association of Social Workers, Code of Ethics. By billing clients (and their insurers) for unauthorized services, [the appellant] failed to promote the well-being of his clients, whose insurance companies have been billed for unlicensed services. The Board concludes such conduct does not conform to provisions 1.01 and 1.04 of the Code of Ethics found in Appendix E of the Board's Rules and Regulations. Additionally, provisions 4.04, 4.06, and 5.01 of the Code condemn such dishonesty, fraud, deception and misrepresentation.

- By losing the ... client file [in the matter underlying the second complaint], or by failing to produce the file as requested by the Board, [the appellant] acted unprofessionally and unethically pursuant to Chapter 12, Section 2(b) and Chapter 11, Sections 2(b)(ix) and (xxi). At best, [the appellant's] failure to produce the file as requested by the Board was a violation of subsection (xxi). More worrisome is [the appellant's] misplacement of a client file, which jeopardizes the confidentiality of the information contained therein as part of his professional service to the client in violation of subsection (ix). Such conduct is also unprofessional and unethical pursuant to Chapter 11, Sections 2(b)(iii) which incorporates (as Appendix E of the Board's Rules and Regulations) the National Association of Social Workers, Code of Ethics. Specifically, by losing the ... file and failing to acknowledge such loss to [the client], [the appellant] failed to fulfill his obligations to the client pursuant to provisions 1.01, 1.07, 1.08 and 5.01 of the Code of Ethics as set forth in Appendix E.

17. Wyo. Stat. Ann. § 33–38–110(c)(iii) through (xi) (Lexis[Nexis] 2003) provides the Board with the discretion to deny [the appellant's] license for any of the causes set forth thereunder. While the Board may deny a license for even a singular infraction set forth under this provision, the Board concludes [the appellant] has committed multiple infractions, which preclude licensure in this case. These infractions, which have occurred over a period of years, are egregious. [The appellant's] blatant misconduct poses a risk to the profession and more importantly, to the public the profession serves, as demonstrated by the four independent consumer complaints filed with this Board.

18. The State has proven, by clear and convincing evidence, that [the appellant's] actions outlined in this Order constitute violations of the above quoted statutes, rules and regulations and code of ethics and that his application for licensure as a clinical social worker is contrary to the integrity of the profession and should be denied.

[¶ 31] Clearly, this case is wholly unlike *Billings I* and *Devous*. Here, rather than relying upon its members' individual standards, the Board meticulously detailed in its order the applicable statutory and administrative standards, including the ethical codes adopted therein. The problem identified in *Billings I* and *Devous* is the impossibility of judicial review where the record does not reveal the identified standard of professional care against which a licensee's conduct is to be measured. That problem does not exist here. Once the legislature and the administrative agency have fully identified the standard of care, it does not require expert testimony, at least in the present circumstances, to establish that standard.

[¶ 32] There remains, however, the question of whether, although the applicable standard of professional care is established in the record, expert testimony is required to establish that the appellant's conduct violated that standard. We are satisfied that expert testimony was not required under the partic-

ular circumstances now before this Court because, as in *Billings II,* the nature of the alleged violations is "within our knowledge." For instance, accepting the Board's credibility determinations, the evidence is such that we are left with little if any doubt that the appellant knowingly practiced without a license and knowingly represented himself as licensed when he was not. Further, the evidence fully supports the conclusion that the appellant engaged in practices clearly identified in Wyo. Stat. Ann. § 33–38–102(a)(v) as "clinical social work," including diagnosis and counseling. And in the matter underlying the second complaint, he either lost a client's file, evidencing gross incompetence, or he refused to produce it at the Board's request, either of which was a licensing violation. Expert testimony was not required to establish these violations.

***Was the denial of re-licensure supported by substantial evidence?***

[¶ 33] In this section of his appeal, the appellant challenges three of the Board's conclusions as having "no bases in facts presented in the record." We will review these contentions under Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) and the substantial evidence test set forth earlier herein.

[¶ 34] The appellant's first argument is that there is no evidentiary support for the Board's conclusion that he "fraudulently represented himself as a licensed counselor to the First Judicial District Court in October 1999." The appellant contends that the record lacks substantial evidence that he made any representation to that court that he was licensed or practicing as a "counselor," which is substantially different from being licensed or practicing as a clinical social worker, and furthermore, the appellant contends that it is unrefuted that he had no knowledge that his renewal application had been denied until December 2, 1999, well after the court hearing at issue.

[¶ 35] We reject these arguments and affirm the Board on this issue because, as so often happens, the appellant's contentions depend upon acceptance of his version of the evidence, rather than upon application of the substantial evidence test. Further, it

must be remembered that, in its findings and conclusions, the Board clearly resolved all credibility issues against the appellant. This is important in our application of the substantial evidence test because we do not second-guess the Board in judging witness credibility. *Hicks v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2005 WY 11, ¶ 18, 105 P.3d 462, 470 (Wyo. 2005); *Davis,* 2004 WY 43, ¶ 7, 88 P.3d at 485 (*quoting Newman v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2002 WY 91, ¶ 26, 49 P.3d 163, 173 (Wyo. 2002)); *City of Casper v. Utech,* 895 P.2d 449, 451–52 (Wyo.1995).

[¶ 36] The record contains the following evidence that, with credibility issues resolved against the appellant, is sufficient for the Board to have found that the appellant knew before the October 1999 custody court hearing that he was unlicensed. First, the appellant testified both that he had not received the license application and fee that were returned to him in January 1999, and that in January 1999 he spoke with a male Board employee who asked him several questions about his application and then told him the license would be issued. In that regard, the Board's only male employee testified that no such conversation took place. In further contradiction to the appellant's denial of knowledge that his license had expired, the Board's executive director testified that the private investigator hired to locate the appellant reported the appellant told him that he had contacted the Board and spoken to the male employee "when he received his renewal application back in the mail...." The Board's executive director also testified that the renewal application and fee that were returned to the appellant were not received back in the Board's mail, indicating that they had been received by the appellant. Finally, the executive director also testified that, when a license is sent to an applicant, a wall certificate is also sent, and that the licensee is required to display the wall certificate in a conspicuous location. The Board found that the lack of such a wall certificate was additional notice to the appellant that he was unlicensed. Taken together, there is substantial evidence supporting the Board's con-

clusion that the appellant knew he was practicing without a license.

[¶ 37] We will pay scant attention to the appellant's rather frivolous argument that he made no representation to the First Judicial District Court that he was a "licensed counselor," as opposed to a "licensed clinical social worker." To begin with, the second complainant testified before the Board as follows:

Q. And during that hearing did he indicate to the court that he was licensed as a social worker in the State of Wyoming?

A. He did. And he also handed out a resumé stating that he was licensed in the State of Wyoming, and introduced himself as an expert in having served as a counselor with my daughter.

Beyond that, inasmuch as the statutory definition of clinical social work includes "counseling," we consider this as little more than an argument over semantics. An unlicensed clinical social worker who practices "counseling" is practicing clinical social work without a license.

[¶ 38] The appellant's second attack upon the evidentiary sufficiency behind the Board's findings and conclusions focuses upon the allegation that he failed to produce his file in the matter underlying the second complaint. Although this issue is characterized by the appellant as a substantial evidence issue, the arguments presented in his appellate brief combine legal and factual elements. Those arguments are: (1) there is no record-retention requirement in the applicable statutes or administrative rules; (2) the file was not requested by a client, but by the client's mother; (3) there was no evidence to prove loss of the file violated an ethical standard; (4) there was no evidence to prove loss of the file violated client confidentiality; and (5) if the appellant was unlicensed at the time the Board requested the file, he was under no duty or obligation to provide anything to the Board.

[¶ 39] The Board's analysis of the "lost file" followed two avenues. First, the Board stated that "at best," the appellant's failure to produce the file in response to the Board's four requests was unethical and unprofessional under Board Rule, ch. 11, § 2(c)(xxi), which requires licensees to respond to requests from the Board for information. And second, the Board concluded that the appellant's misplacement of the file jeopardized its confidentiality in violation of Board Rule, ch. 12, § 2(b) and ch. 11, § 2(b)(iii) and (c)(ix), as well as provisions 1.01, 1.07, 1.08 and 5.01 of the Code of Ethics.

[¶ 40] The question in a substantial evidence challenge is whether there was " 'relevant evidence [that] a reasonable mind might accept in support of the agency's conclusions.' " *Davis*, 2004 WY 43, ¶ 6, 88 P.3d at 485 (*quoting Legarda*, 2003 WY 130, ¶ 10, 77 P.3d at 712). In the present case, however, the appellant does not really challenge the quantum of the evidence—he admits that he cannot locate the file at issue—instead, for the most part, he challenges the existence of any duty on his part to keep or produce the file. Three of his five arguments are of that nature: that there is no record-retention requirement, that the file was not requested by a client, and that unlicensed persons are under no obligation to the Board. For several reasons, we will not further consider these issues. First, they are not substantial evidence issues, and that is how they were presented. Second, the appellant was not accused of violating a record-retention requirement, but of jeopardizing a client's right to confidentiality and the integrity of the profession. Third, the appellant presents no law as to the duty, or lack thereof, of a clinical social worker to produce a file at the request of a parent of a client who is a minor child. And fourth, the appellant presents no law in support of his interesting theory that, if one is practicing without a license, one is not required to follow licensing standards.

[¶ 41] The two remaining issues are evidentiary in nature: whether there was evidence to prove that loss of the file violated an ethical standard and whether there was evidence to prove that loss of the file violated client confidentiality. We will affirm the Board as to these issues because they reflect a misunderstanding of the process of applying the law to the facts. Where the standard of care is identified by statute or rule, and

where· facts are presented such that the Board is able to apply the law to the facts, testimony to the effect that "these facts constitute a violation of the law" is neither necessary nor appropriate. It is the role of the fact-finding decision-maker, not the role of the witness, to apply the law to the facts. In the instant case, the standard of care is well defined in the administrative rules adopted pursuant to statute—licensees are to maintain the confidentiality of client files, they are to provide clients with reasonable access to records, and they are to respond to reasonable requests from the Board—and the conduct at issue—losing a client's file—was fully developed in the evidence before the Board.

[¶ 42] The appellant's third challenge to the sufficiency of the evidence is similar to the portion of his first challenge where he argues that he made no representation to the First Judicial District Court that he was a "licensed counselor," as opposed to a "licensed clinical social worker." Finding of Fact 11 in the Board's order stated that "after [the appellant] had been notified by the Board that his license had expired, he continued to practice as a counselor until July 17, 2000. . . ." In regard to this finding, the appellant makes the following complaint:

> The MHPL Board, who is supposed to be the expert regulators in Wyoming of the mental health professions, cannot itself delineate between what comprises the "Practice of Clinical Social Work" or the "Practice of Professional Counseling", Wyo. Stat. § 33–38–102(a)(v) and (vi), respectively! That is a very important distinction! The MHPL Board wants to complain that [the appellant] is not licensed as a Clinical Social Worker, but denies his license application upon assertions that he is practicing "Counseling"! WOW, a simple point to demonstrate the need for expert testimony and lack of substantial evidence! There is ABSOLUTELY no evidence in the record concerning what actions or practice are encompassed within the practice of "Counseling", Wyo. Stat. § 33–38–102(a)(vi) or practice of "Clinical Social Work", Wyo. Stat. § 33–38–102(a)(v).

[¶ 43] As with the earlier incarnation of this argument, we will give this reincarnation short shrift. A reading of the entire order makes it clear that use of the word "counselor" in the quoted sentence did not indicate any intent on the part of the Board to charge the appellant with the unlicensed "[p]ractice of counseling" under Wyo. Stat. Ann. § 33–38–102(a)(vi), rather than the unlicensed "[p]ractice of clinical social work" under Wyo. Stat. Ann. § 33–38–102(a)(v), nor did it indicate any confusion on the part of the Board as to any differences between the two professions. To begin with, as noted earlier herein, the practice of clinical social work includes, by statutory definition, "counseling." In addition, repeated references throughout the order place the counseling allegation squarely within the confines of the practice of clinical social work. For instance:

> [Finding of Fact] 16. . . . Regardless, [the appellant] certainly knew he held no valid license to practice social work in December 1999 when he signed for a certified letter from the Board requesting he cease and desist from counseling without a license, yet he continued to provide counseling services and continued to bill Blue Cross and Blue Shield for those services. Even after the Board notified [the appellant] on July 26, 2001 that his July 2000 application had been denied, [the appellant] continued to provide counseling services and hold himself out to the public as a licensed clinical social worker. . . .

> [Finding of Fact] 17. . . . [The appellant] also denied he engaged in the activities listed in the Wyoming Statutes defining professional social work services, such as assessment, diagnosis, treatment including counseling, client-centered advocacy, consultation and evaluation of individuals and families. . . . Yet [the appellant] admitted he made diagnoses from the Diagnostic and Statistical Manual, Fourth Edition (DSM–IV). . . . [The appellant] also represents himself as a counselor in the yellow pages of the phone book. . . .

> [Conclusion of Law] 10. . . . The overwhelming evidence presented by the State showed [the appellant] was acting as a clinical social worker and practicing clinical social work as defined by Wyo. Stat. Ann.

§ 33–38–102(a)(iii) and (v) (Lexis[Nexis] 2003) in that he clearly provided assessments, counseled individuals and made diagnoses in accordance with the DSM–IV Manual when he was not licensed to perform those services in violation of Wyo. Stat. Ann. § 33–38–102(a) (Lexis[Nexis] 2003).

[¶ 44] The only real issue presented by these circumstances is whether the word "counseling" needs expert definition before this Court is able to review the Board's conclusion that the appellant provided unlicensed counseling services within the meaning of the "[p]ractice of clinical social work" under Wyo. Stat. Ann. § 33–38–102(a)(v). We conclude that it does not. Generally, words used in a statute are given their plain, ordinary and usual meaning, unless the statute clearly intends otherwise. *Saiz v. State*, 2001 WY 76, ¶ 10, 30 P.3d 21, 25 (Wyo.2001) (*quoting Campbell v. State*, 999 P.2d 649, 657 (Wyo.2000)). Where statutory words have both an ordinary meaning and a " 'peculiar and appropriate meaning in law,' " however, the technical meaning is preferred unless that construction is contrary to legislative intent. *Amoco Production Co. v. State*, 751 P.2d 379, 383 (Wyo.1988) (*quoting* Wyo. Stat. Ann. § 8–1–103(a)(i) ((LexisNexis 2005))).

[¶ 45] In the instant case, the appellant has not even attempted to argue that the word "counseling" as used in Wyo. Stat. Ann. § 33–38–102(a)(v) should be given anything but its ordinary dictionary definition. For that matter, we do not even need to venture so far as the dictionary, inasmuch as the legislature has, in Wyo. Stat. Ann. § 33–38–102(a)(ii)(A), defined the word as it pertains to mental health procedures:

> "Counseling" means assisting clients through the counseling relationship, using a combination of mental health, psychotherapy and human development principles, methods and techniques, to achieve mental, emotional, physical, social, moral, educational, spiritual or career development and adjustment through the life span, but shall not include religious instruction[.]

[¶ 46] All four of the complainants in the consumer complaints filed against the appellant testified that he provided counseling or psychotherapy services during the period of time in which he was not licensed to do so. In the four separate cases he provided pre-adoption counseling to a child, he counseled a child concerning visitation after a divorce, he provided psychotherapy services to a child in a court-ordered supervised visitation situation, and he provided conflict resolution and parenting education in an ongoing divorce litigation. That evidence was sufficient to place the appellant's conduct squarely within the statutory definition of counseling. In addition, the Board also found that the appellant provided assessments and made diagnoses under the mental health profession's Diagnostic and Statistical Manual (DSM–IV). While the appellant characterized his work as "mediation" and "conflict resolution" in a "forensic" setting, it is clear that, in each of these cases at least, he had a specific client that he counseled in the statutory sense.

### *Was the appellant's right to due process of law violated when evidence was presented during the contested case hearing concerning matters not identified in the notice of hearing?*

[¶ 47] Resolution of this issue will require an awareness of the precise steps leading to the contested case hearing. As mentioned earlier herein, the Board's letter denying the appellant's re-licensure application mentioned (1) fraudulent representation to a district court that the appellant was a licensed counselor; (2) practicing as a counselor despite notice that his license had expired; (3) deficient continuing education; and (4) inability to locate a file. The letter then specified that the appellant's application was being denied because (1) he had practiced without a license in violation of Wyo. Stat. Ann. § 33–38–110(a)(i) and (c)(iii) and Board Rule, ch. 12, § 2(a)(iii); and (2) his inability to produce his records concerning the second complaint constituted gross negligence or malpractice, in violation of Wyo. Stat. Ann. § 33–38–110(c)(iv) and Board Rule, ch. 12, § 2(a)(vii) and ch. 11, § 2. The letter concluded by informing the appellant that he had 30 days in which "to request a

hearing before the Board for reconsideration...."

[¶ 48] The appellant filed a timely response to the Board's letter, stating "[p]ursuant to your denial letter of July 26, 2001, please consider this a written request for hearing before the board." The Board, in turn, responded with a Notice of Hearing that stated as follows:

The Mental Health Professions Licensing Board has denied your application to become a Licensed Clinical Social Worker due to violation[s] of Wyo. Stat. 33–38–110(a)(i), 33–38–110(a)(iii) [ (c)(iv) ], and the Board's Rules and Regulations Chapter 12, Section 2(a)(iii), Section 2(a)(vii) and Chapter 11 Section 2, and failure to meet the continuing education requirements in Chapter 3 Section 7 and Chapter 10 Section 1(b)(iii). Pursuant to your request that a hearing be held to re-examine your application.... [8]

[¶ 49] At the time the appellant's application was denied, only the first two of the four consumer complaints had been filed with the Board. Nevertheless, when the State filed its disclosure statement in preparation for the hearing, it listed as witnesses the complainants from all four complaints, and offered exhibits related to all four complaints. Further, rather than stating the issue as "reconsideration of denial. of the application," or even "reconsideration of the application," the disclosure statement stated the issue as: "Should the Mental Health Licensing Board issue [the appellant] a license as a clinical social worker?"

[¶ 50] The appellant responded to the State's disclosure statement by filing a prehearing motion to exclude all evidence related to matters that occurred after denial of his application. At the start of the hearing, the appellant's counsel mentioned the outstanding motion and objected to the presentation of any evidence concerning matters that occurred after the license application was denied. The hearing examiner denied the motion and overruled the objection on the ground that the issue was not just wheth-

er the earlier denial was justified, but whether the appellant should be licensed, and the latter question implicated all relevant matters, whether they occurred before or after the denial. The appellant now claims that this ruling violated his right to the due process of law, specifically his right to reasonable notice.

■■■■ [¶ 51] The right to practice a licensed profession is a conditional property right protected by the due process clauses of the Constitution of the United States and the Constitution of the State of Wyoming. *Devous*, 845 P.2d at 415. "Procedural due process requires the applicant be given reasonable notice and a meaningful opportunity to be heard by the body which rules on his application before government action may substantially affect a significant property interest." *Frank v. State By and Through Wyoming Bd. of Dental Examiners*, 965 P.2d 674, 679 (Wyo.1998). For that reason, a licensing board may not consider in a contested case hearing matters concerning allegations of which the licensee had no notice. *Slagle v. Wyoming State Bd. of Nursing*, 954 P.2d 979, 982–83 (Wyo.1998). On the other hand, issues not raised in a hearing notice may be raised in the parties' disclosure statements, which are the equivalent of pleadings in a civil case. *Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 20, 19 P.3d 500, 507 (Wyo.2001); *Ireland v. State ex rel. Wyoming Workers' Compensation Div.*, 998 P.2d 398, 401 (Wyo.2000).

[¶ 52] Having carefully reviewed the record and the parties' appellate briefs, we find no substance to the appellant's due process of law arguments. We note initially that the appellant does not actually contend that he lacked notice of the issues that were considered at the hearing. Rather, he contends only that the evidence should have been limited to the matters reflected in the notice of hearing. That is not the law. As we stated in *Wesaw* and *Ireland,* issues may also be formulated in the parties' disclosure statements, just as happened here.

8. The continuing education deficiency apparently was resolved along the way and is not now before this Court.

[¶ 53]   We also conclude that the appellant had actual, timely notice of all the allegations with which he was confronted.  This administrative process began in 1998 with his tardy filing of a renewal application.  All four citizen complaints had been filed by August 2002.  The State's disclosure statement, listing all its witnesses and exhibits, was served on the appellant on October 11, 2002, and the hearing did not take place for a full year thereafter!  *See Pederson v. State ex rel. Wyoming Workers' Compensation Div.*, 939 P.2d 740, 743 (Wyo.1997) (disclosure statement two months before hearing provided notice).

## CONCLUSION

[¶ 54]   The order of the district court affirming the Wyoming Mental Health Professions Licensing Board's denial of the appellant's application for licensure is affirmed. The appellant's issues pertaining to his earlier renewal application were not preserved for appeal.  Expert testimony was not required to prove the alleged licensing violations in this case, those violations were proven by substantial evidence, and the appellant received adequate notice prior to the contested case hearing.